Vincent P. MACRI, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–98–00685–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 20, 1999.

Discretionary Review Refused
April 19, 2000.

Julie Pollock, Hitchings & Pollock, San Antonio, for Appellant.

Barbara Hervey, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

A jury found Vincent P. Macri guilty of the offense of burglary of a habitation with intent to commit aggravated assault. Macri elected punishment from the court and the trial judge assessed punishment at life in prison, to be served consecutively with the 20–year sentence assessed in Cause 97–CR–5378. Macri moved for a new trial and the trial judge denied the motion without a hearing. Macri raises seven issues in this appeal.

## Legal and Factual Sufficiency

In his first issue, Macri asserts that the evidence presented at trial is both legally and factually insufficient to show that he burglarized the home of his ex-girlfriend, Sonja Baggett, with the specific intent of committing the offense of aggravated assault, or that an assault occurred, or that he attempted to commit the offense of aggravated assault. To review a challenge about the legal sufficiency of the evidence, the court of appeals reviews the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Mosley v. State,* 983 S.W.2d 249, 254–255 (Tex.Crim.App.1998). In conducting this review, the jury serves as the exclusive judge of the credibility of witnesses and of the weight to be given their testimony; and therefore, reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Mosley,* 983 S.W.2d at 254–255. In a factual sufficiency challenge, the reviewing court reviews all evidence *without* the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if it is so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996). We first consider Macri's legal sufficiency complaint.

For Macri's conviction to be legally sufficient, the State had to prove that Macri intentionally and knowingly entered the home of Sonja Baggett, without Ms. Baggett's consent, with the intent to commit the felony of aggravated assault, or that Macri intentionally or knowingly entered Ms. Baggett's home and attempted to commit, or committed, the offense of aggravated assault. Viewed in the light most favorable to the verdict, the evidence shows that after pounding on the door of Sonja Baggett's house at 5:18 a.m. on February 15, 1997, Macri hurled himself through a downstairs window of the house. The evidence further shows that, upon entering the house, Macri had a handgun in his hand and that he placed the gun in the pouch of his sweatshirt after Sonja's 14-year old daughter, Ryan, screamed. Frightened by these events, Ryan turned and ran up the stairs, shouting for Rachel, the baby-sitter. Macri followed Ryan up the stairs, yelling "where is she, where is she?," and ran into Sonja's bedroom. Sonja was not in the house, however. Although her car was parked in the driveway in front of the house, Sonja was out-of-town, having left Ryan and her 11-year old disabled son, Casey, in Rachel's care. Rachel, having been awakened by the pounding on the door and the sound of shattering glass, attempted to check on Casey, but was prevented from doing so when Macri cornered the girls and began to wave a knife in their faces. As he waved the knife, Macri continued yelling, stating that "you can't do this to someone after you're with them for two and a half years." At one point, Macri told Ryan to take the knife from him and kill him. After kicking some clothing and Christmas decorations, Macri stated to Ryan "you'll get yours bitch" and left the house.

Macri argues that his statement to Ryan to take the knife from him and kill him, and that his departure from the house without physically injuring someone, negate the specific intent of committing aggravated assault. A person commits the offense of aggravated assault if he uses or exhibits a deadly weapon, *see* TEX. PEN. CODE ANN. § 22.02(a)(2) (Vernon 1994), while intentionally or knowingly threatening another person with imminent bodily injury, *id.* § 22.01(a)(2), or by intentionally or knowingly causing physical contact with another when the person knows or should know that the other will regard the contact as offensive or provocative, *id.* § 22.01(a)(3). In finding Macri guilty of burglary with the intent of committing aggravated assault, the jury could reasonably infer the intent to assault Sonja from Ma-

cri's act of breaking into Sonja's home and running into her bedroom yelling "where is she, where is she?" while carrying a knife and a handgun. As a result, the evidence detailed above is legally sufficient to prove that Macri entered the house with the intent of committing the offense of aggravated assault, specifically, by assaulting Sonja. For the same reasons, the evidence is legally sufficient to prove that Macri attempted to assault Sonja, his attempt having been foiled by Sonja's absence. The evidence is also legally sufficient to prove Macri committed aggravated assault. In the instant case, Ryan testified that she and Rachel "got pushed" into the corner and that Macri waved the 4-inch blade of the knife approximately 12 inches from their faces (Ryan and Rachel) for about two minutes as he ranted and raved. A jury could reasonably conclude that Macri attempted to commit, or committed, aggravated assault. Applying the *Jackson* standard to the facts of this case, we find a rational trier of fact could have found beyond a reasonable doubt that Macri committed the offense of burglary with the intent of committing the felony offense of aggravated assault. We next consider Macri's factual sufficiency complaint.

The evidence outlined above was uncontroverted. In addition to this evidence, Sonja testified that Macri did not have consent to enter her home. Sonja further testified that she had obtained a protective order two days prior to the break-in incident which prohibited Macri from entering her home. In addition, Officer Mendez, who was dispatched to Sonja's house that night, testified that Ryan and Rachel were very scared when he arrived. He further testified that Ryan told him what had occurred and that he observed the broken window. Through cross-examination, Macri established that although Ryan testified that Macri had an automatic handgun in his pouch, Ryan did not identify the hand-

gun as an automatic weapon when she spoke to Mendez shortly after Macri left the house. Despite this discrepancy in Ryan's initial statement to the police, the evidence is factually sufficient to support Macri's conviction. As a result, we overrule Macri's issue challenging the legal and factual sufficiency of the evidence.

## Ineffective Assistance of Counsel

In his second issue, Macri contends that he received ineffective assistance of counsel in both the guilt/innocence and punishment phases of trial. Specifically, he complains that his attorney: (1) failed to object to victim impact testimony presented during the guilt/innocence phase of trial, (2) failed to object to the admission of extraneous offense evidence, (3) failed to object to prejudicial jury argument by the prosecutor, (4) failed to request a jury instruction for the lesser included offense of criminal trespass, (5) failed to raise the insanity defense, and (6) failed to obtain a defense expert to determine his sanity at the time of the offense. About the last complaint, he argues that examination by a psychiatrist could have at least provided evidence that might have mitigated his punishment—*i.e.,* a life sentence stacked onto the 20–year sentence he received for burglarizing Sonja's home and burning it.

■■■ A claim of ineffective counsel is reviewed under the standard set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove ineffective assistance of counsel under *Strickland,* the appellant must prove that his lawyer's conduct was deficient, and that the result of the proceeding would have been different but for the lawyer's deficient performance. *Strickland,* 104 S.Ct. at 2064, 2068. This standard applies to both phases of trial.[1] Whether this standard has been met is judged by

---

1. *See Hernandez v. State,* 988 S.W.2d 770, 772 (Tex.Crim.App.1999) (stating that *Strickland* applies to punishment phase of trial and overruling *Ex Parte Duffy,* 607 S.W.2d 507 (Tex. Crim.App.1980) which was previously used to evaluate effectiveness of counsel during punishment phase).

the totality of representation rather than by isolated acts or omissions by trial counsel. *Butler v. State*, 716 S.W.2d 48, 54 (Tex.Crim.App.1986). Despite complaints about his trial lawyer, the record does not reflect ineffective assistance of counsel.

■ Although Macri is correct that his attorney should have objected to the victim impact testimony that was presented during guilt/innocence phase,[2] Macri has not shown that the result of his trial would have been different had this testimony not been presented. Even without this testimony, jurors would naturally assume that a 14–year old child who was terrorized in her own home would be negatively impacted. The testimony here, although improper evidence, was a limited statement describing a very natural response to Macri's actions. The failure to object to Ryan's testimony did not deprive Macri of effective assistance of counsel.

■ Likewise, Macri's complaint about the failure to object to the admission of extraneous offense evidence did not deprive him of effective assistance of counsel. Specifically, Macri complains that his attorney failed to object to the introduction of the protective order that prohibited him from going to Sonja's home. This order contained language stating that Macri had committed family violence and that family violence was likely to occur again. Because this statement is extraneous and prejudicial, Macri asserts that his lawyer should have objected to the admission of this document, or should have at least asked that the language about family violence be redacted. While Macri is argu-

ably correct in his contention, Sonja's testimony about whether Macri had consent to enter her home inferred that an incident of violence had occurred between Macri and Sonja,[3] and that Sonja feared violence would occur again. Why else would Sonja seek a protective order? Even if Macri's lawyer had objected to the introduction of the document, the jury had already been presented with overwhelming evidence of Macri's guilt. Considering that the jury deliberated for less than 45 minutes before announcing the guilty verdict, it is unlikely that jurors studied the document and identified the language about family violence.

■ Because we are satisfied that Macri was not deprived of effective assistance of counsel, we will not further belabor the errors of his lawyer. Macri's attorney actively participated in his defense by objecting to the State's evidence, cross-examining the State's witnesses, and identifying inconsistencies in the testimonies of the State's witnesses. In addition, the attorney filed motions in limine to preclude the State's witnesses from testifying about Macri's other bad acts and his other criminal charges involving Sonja. Despite Macri's argument that his lawyer was deficient for failing to have a psychiatrist examine him, nothing in the record indicates that as a result of a severe mental illness or defect, that Macri did know that his conduct was wrong. TEX. PEN.CODE § 8.01(a) (Vernon 1994) (providing for affirmative defense of insanity). Had Macri believed that a mental illness contributed in any way to his actions on the morning of

2. Macri complains about the testimony below which followed Ryan's description about the evening's events:

> State: Now, Ryan, since this night what sort of impact has this had on your life, just with you?
> Ryan: I'm really scared of the dark. I don't like to go outside at night, take the trash out or something. If my mom goes out and it's just me in the house, I can't sleep with my door closed. Whenever I see a white two-door Trans Am, the car Vince

drove, I get very nervous and panicky, even though I know it's not him.

3. Sonja testified that she sought a protective order because Macri continued to call her after she broke off their relationship. She further testified that the process to obtain the protective order took about one month and she obtained the final order on February 13, 1997. Sonja also testified that she added an additional lock to the doors of her house in order to protect her family. She did not testify about any acts of family violence.

February 15, 1997, he could have so stated when he testified during the punishment phase of trial. Instead, he attributed his actions to his addiction to cocaine. The evidence was simply too overwhelming for the lawyer to do much more. We overrule Macri's complaint about ineffective assistance of counsel.

## Motion for New Trial

In his third issue, Macri contends that the trial judge erred by failing to conduct a hearing on his motion for a new trial wherein he asserted that he was denied effective assistance of counsel. Whether the trial judge errs by failing to hold a hearing on a motion for new trial is reviewed using an abuse of discretion standard. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993). When a motion for new trial presents matters that are not determinable from the record, the trial judge abuses his discretion by failing to hold a hearing; however, if the motion presents matters that are determinable from the record, the trial judge does not abuse his discretion by failing to conduct a hearing. *Reyes v. State*, 849 S.W.2d 812, 816 (Tex.Crim.App.1993). Thus, we must decide whether Macri's motion raised issues that could not be determined on the record.

In his motion for new trial, Macri asserted he had witnesses who would have testified at trial, had his attorney called them, about facts that would have mitigated his punishment. Two letters were attached to the motion—one from Macri's ex-wife and another from an early intervention specialist who trained Macri in the use of special equipment needed to sustain his disabled son's life. Therein, both women attested to Macri's good deeds, asserted that Macri had a good heart, and asked the trial judge to consider Macri's past in determining his punishment. As the trier of fact during the punishment phase, the trial judge could determine whether the information contained in the affidavits would have caused him to mitigate Macri's punishment. At this point, however, the trial judge had not only heard the testimony of the four guilt/innocence phase witnesses discussed herein, but the judge had also heard testimony from Officer Vidaurri, one of the officers that responded to the burglary that was the subject of Macri's conviction in Cause No. 97–CR–5378.[4]

Vidaurri described Macri's destruction and burning of Sonja's home, and how Macri demanded that Sonja be brought to the house during a stand-off with police. The trial judge had also heard Sonja's testimony during the punishment phase about how Macri threatened her on a daily basis after their breakup and how those threats escalated into twice burglarizing her home. The trial court also heard Macri's testimony about his personal history and how drug addiction had led him to his own destruction. As the trier of fact for punishment, the trial court could determine from the affidavits whether he would have imposed a lesser sentence had he heard testimony from the people who wrote the letters. Although a harsh punishment, the trial court obviously determined that testimony from two additional character witnesses would not have made a difference in sentencing. The trial judge did not abuse his discretion by denying a hearing on Macri's motion for a new trial. We overrule this issue.

## Admission of Audio Tape Recording

In his fourth, fifth, and sixth issues, Macri complains about the admission of an audio tape recording. This tape was recorded from Sonja's telephone answering machine at 11:46 p.m. on February 15, 1997.[5] Macri argues that the admission of this tape was improper because it included

---

**4.** This cause was the conviction that resulted in Macri's 20–year sentence.

**5.** On the tape, Macri stated:

". . . But don't worry about it. I'm always going to be around. You pushed it. I'll finish it. I always told you that. I'm going to finish it. Yes, I am. I can't wait. Yeah, babe. Bye, bye."

evidence of an extraneous offense, because it was irrelevant, and because the tape's probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. In particular, Macri argues that the tape was not sufficiently related in time to aid the jury in determining intent at the time he entered Sonja's home.

The rules of evidence favor the admissibility of relevant evidence. TEX.R. EVID. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* R. 401. In the instant case, the audio tape was relevant to Macri's intent at the time he entered Sonja's home. Macri's intent was an element of the offense with which Macri was charged. In particular, Macri's words "I'm always going to be around. You pushed it. I'll finish it. I always told you that. I'm going to finish it. Yes, I am," tended to make it more probable that Macri intended to commit aggravated assault when he entered Sonja's home. While the words Macri spoke on the tape, as well as the chilling tone of his voice, contained prejudicial value, his words were clear enough that the jury would not have been confused about Macri's meaning. *Id.* R. 401. Despite the remoteness in time, Macri was clearly referring to his attempt to assault Sonja earlier that day, leaving little confusion about whether he intended to assault Sonja when he entered her home at 5:00 a.m. or whether he intended for 14-year old Ryan to take his knife from him and kill him. Although Macri complains that the tape contained evidence of an extraneous offense, we find that the act discussed therein—his threat to finish it, was directly relevant to the charged offense. We overrule issues four, five and six.

### Sentencing

■ In his final issue, Macri contends that the trial court abused its discretion by imposing a consecutive sentence. He argues that, in sentencing him, the trial judge considered his prior conviction for burglary with the intent to commit arson, an offense which occurred prior to the instant offense, and for which he received a 20–year prison sentence. The effect of stacking the life sentence in this case onto the 20–year sentence, he argues, punishes him twice for the burglary/arson case. Because he contends that he is being punished twice for the same offense, Macri maintains that the constitutional guarantee against double jeopardy has been violated.

Article 42.08(a) of the Code of Criminal Procedure gives the trial judge the discretion to cumulate sentences; therefore, a complaint about consecutive sentences is reviewed using an abuse of discretion standard. TEX.CODE CRIM. PROC. ANN. art. 42.08(a) (Vernon Supp.1999). In the instant case, Macri was convicted of the offense of burglary with the intent of committing aggravated assault, a first degree felony punishable by imprisonment for life or for any term not more than 99 years or less than 5 years, TEX. PEN.CODE §§ 12.32, 30.02(d)(2) (Vernon 1994 & Supp.1999). The sentence imposed here is consistent with these guidelines. Notwithstanding Macri's double-jeopardy argument, the evidence presented during the guilt/innocence phase of the trial alone indicated the need for a punishment that would insure public safety—in particular, the safety of Sonja Baggett and her family, and questioned the likelihood of rehabilitation of the defendant. *Id.* § 1.02 (Vernon 1994) (setting out objectives of Texas Penal Code). Under these circumstances, the trial judge did not abuse his discretion by cumulating the sentences. We overrule Macri's final issue.

Having overruled each of Macri's issues, we affirm the judgment of the trial court.