TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00157-CR






Samuel Martinez a/k/a Sammy Martinez, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT

NO. 2002-046, HONORABLE RON CARR, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 A jury convicted Samuel Martinez (Martinez) of burglary with intent to commit
aggravated assault and sentenced him to forty years' imprisonment. See Tex. Pen. Code Ann.
§ 22.02 (West Supp. 2004), § 30.02 (West 2003). Martinez claims on appeal that the evidence was
legally and factually insufficient to support the jury's finding that he entered the home of the alleged
victim without the victim's consent, and that the evidence was factually insufficient to support the
finding that he had the intent to commit aggravated assault. We affirm the judgment of conviction.


BACKGROUND


 Martinez lived with his wife, Virginia Martinez (Virginia), in an apartment complex
in Lockhart. Stephanie Martinez (Stephanie), who is unrelated, lived in the apartment beneath
Martinez and Virginia. Donald Hafemeister (Hafemeister) and his common law wife, Stacy Bost
(Bost), lived in the apartment next to Stephanie's.

 Martinez, Virginia, Stephanie, Hafemeister, and Bost socialized often, and Martinez
made frequent social visits to Hafemeister's apartment. Hafemeister testified that he and Bost
typically left their front door ajar during the day, and that this was a sign inviting Martinez, Virginia,
and Stephanie to enter their apartment and visit. He testified that even when the door was open,
Martinez, Virginia, and Stephanie would customarily knock or announce their presence in some
fashion when they entered Hafemeister's apartment. 

 On August 4, 2001, Martinez and Hafemeister spent the afternoon drinking in
Hafemeister's apartment. Virginia was in the Martinezes' apartment cooking enchiladas in
preparation for a dinner the couple had planned that evening. Hafemeister testified that he and
Martinez became intoxicated. The friendly gathering took an unfriendly turn, however, when
Martinez said the word "bitch" at a time when Bost was walking by the two men. Hafemeister
confronted Martinez, asking him if his comment was directed at Bost. Martinez denied
Hafemeister's accusation, claiming that he was referring to his own wife, Virginia. Hafemeister told
Martinez that he thought they had had too much to drink and that Martinez needed to leave. 
Martinez complied. Hafemeister testified that, at that point, Martinez was not welcome in
Hafemeister's apartment until after he had "slept it off." However, Hafemeister did not explicitly
relate his intent to Martinez.

 Martinez went back to his apartment. He began arguing with Virginia, asking her if
Hafemeister was her boyfriend. The argument escalated to the point that Virginia left the apartment
to go to her mother's house. Virginia testified that when she returned about an hour later the
apartment was a mess--the food she had been cooking was on the floor and several holes had been
knocked into the wall. 

 Meanwhile, about twenty to thirty minutes after he had been told to leave, Martinez
returned to Hafemeister's apartment and entered through the front door. He carried a steak knife in
the back pocket of his pants. He asked Hafemeister why he had talked to him "that way." Although
Stephanie testified that Hafemeister's front door had been open, Hafemeister and Bost both testified
that it had been closed. Hafemeister testified that Martinez had returned with an angry demeanor
and was argumentative. Bost and Stephanie noticed Martinez's knife. Stephanie called the police,
and, from the front door, Bost warned Hafemeister that Martinez had a knife. In response,
Hafemeister picked up an opened lock-blade knife that he frequently carried, but put it back down
after a moment. Martinez told Hafemeister that he was going to "stick" him. Hafemeister picked
up a Coca-Cola bottle and asked Martinez if he wanted to take the dispute outside. Martinez
responded, picking up another Coca-Cola bottle. At that point, Officer Vollmar of the Lockhart
Police Department arrived. Vollmar testified that, upon his arrival, he saw Martinez clutching a
knife in his right hand, blade down, standing less than arm's length from Hafemeister. Vollmar drew
his handgun and three times ordered Martinez to drop his weapon before Martinez complied. 
Martinez dropped his knife and the Coca-Cola bottle. Vollmar arrested Martinez and charged him
with criminal trespass.

 Martinez was indicted for aggravated assault and burglary with intent to commit
aggravated assault. He was acquitted of the former charge and convicted of the latter. Martinez's
punishment range was enhanced by two prior felony convictions, and he was sentenced to forty
years' imprisonment.


DISCUSSION


 The elements of burglary are: (1) a person; (2) without effective consent of the
owner; (3) enters a habitation or building; (4) not then open to the public; (5) with the intent to
commit a felony, theft, or assault. Tex. Pen. Code Ann. § 30.02(a)(1) (West 2003); see Alba v. State,
905 S.W.2d 581, 584 (Tex. Crim. App. 1995). Martinez appeals asserting that (1) there is neither
legally nor factually sufficient evidence to support the jury's finding that he entered Hafemeister's
residence without consent; and (2) there is not factually sufficient evidence to support a finding that
he entered Hafemeister's residence with the intent to commit a felony--in this case, aggravated
assault.


Standards of review

 The test for legal sufficiency is whether, after viewing all the evidence in the light
most favorable to the verdict, any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. See Griffin v. State, 614 S.W.2d 155, 158 (Tex. Crim. App.
1981). This standard applies in both direct and circumstantial evidence cases. See Burden v. State,
55 S.W.3d 608, 612 (Tex. Crim. App. 2001). 

 When conducting a factual sufficiency review, the evidence is not viewed in the light
most favorable to the verdict. Instead, all the evidence is considered equally, including the testimony
of defense witnesses and the existence of alternative hypotheses. See Orona v. State, 836 S.W.2d
319, 321 (Tex. App.--Austin 1992, no pet.). A factual sufficiency review asks whether a neutral
review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of
guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence
in the jury's determination. See Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). Appellate
courts exercise their fact jurisdiction only to prevent a manifestly unjust result, and are not free to
reweigh the evidence and set aside a verdict merely because a different result is more reasonable. 
See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). They must maintain appropriate
deference to the jury's verdict by finding error only when the record clearly indicates that the verdict
is wrong and manifestly unjust. See Johnson, 23 S.W.3d at 7; Cain, 958 S.W.2d at 407.

 The court of criminal appeals recently clarified how the reasonable doubt standard
at trial influences the factual sufficiency standard of review:


There are two ways in which the evidence may be insufficient. First, when
considered by itself, evidence supporting the verdict may be too weak to support the
finding of guilt beyond a reasonable doubt. Second, there may be both evidence
supporting the verdict and evidence contrary to the verdict. Weighing all the
evidence under this balancing scale, the contrary evidence may be strong enough that
the beyond-a-reasonable doubt standard could not have been met, so the guilty
verdict should not stand. This standard acknowledges that evidence of guilt can
"preponderate" in favor of conviction but still be insufficient to prove the elements
of the crime beyond a reasonable doubt. Stated another way, evidence supporting
guilt can "outweigh" the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard.



Zuniga v. State, No. 539-02, 2004 WL 840786, at * 7 (Tex. Crim. App. Apr. 21, 2004).



Consent

 Martinez asserts in his first point of error that the evidence is legally and factually
insufficient to support the jury's finding that he entered Hafemeister's residence without his consent. 
"Effective consent" is defined in the penal code to "include[] consent by a person legally authorized
to act for the owner." Tex. Pen. Code Ann. § 1.07(a)(19) (West Supp. 2004). There is no dispute
that Hafemeister was legally authorized to give or withhold "effective" consent to enter his
apartment; (1) thus, we need consider only whether Martinez had "consent" to enter. In the penal code,
"'[c]onsent' means assent in fact, whether express or apparent." Id. § 1.07(a)(11).

 Martinez places great emphasis on what he characterizes as the custom or practice
of Hafemeister and him to permit each other to enter their respective apartments. He urges that the
consent issue is properly framed as whether there is evidence that he was aware that Hafemeister had
revoked his consent for Martinez to enter, and that the evidence is legally and factually insufficient
to support such a finding. Assuming without deciding this view of the consent element is correct, (2)
we hold that there is both legally and factually sufficient evidence to show that Martinez did not have
Hafemeister's effective consent to enter his residence.

 As for our legal sufficiency review, the following evidence was such that any rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt:

 Hafemeister's comments to Martinez that "they'd had too much to drink" and
that "he'd better leave"; 


 Hafemeister's and Bost's testimony that the door was closed when Martinez
returned; 


 Testimony that it was the couples' custom to allow each other into their
respective apartments only when the door was open;


 Testimony that even when the door was ajar, it was the custom to knock before
entering; 


 Hafemeister's testimony that he did not intend Martinez to reenter at that time. (3)



 The reasonable implication from Hafemeister's command that Martinez leave as they
had had too much to drink is that Martinez was not to come back until he had sobered up. The
record shows that Martinez had not knocked or made his presence known in any way upon reentry,
as was the custom. Finally, there was evidence that the front door was closed and that it was
customary to enter only when the door was ajar. When viewing this evidence in the light most
favorable to the verdict, a rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Therefore, the evidence is legally sufficient to support the finding that
Martinez knew he did not have Hafemeister's consent to enter.

 Likewise, the evidence was factually sufficient to support a finding of lack of consent. 
We are mindful in our determination that appellate courts are to exercise their fact jurisdiction only
to prevent a manifestly unjust result, and are not free to reweigh the evidence and set aside a verdict
merely because a different result is more reasonable. See Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997). They must maintain appropriate deference to the jury's verdict by finding error
only when the record clearly indicates that the verdict is wrong and manifestly unjust. See Johnson,
23 S.W.3d at 7; Cain, 958 S.W.2d at 407.

 Viewing the totality of the evidence in a neutral light under a factual sufficiency
analysis, we conclude that the evidence was sufficient to support the verdict. In support of the
verdict is Hafemeister's testimony that he had told Martinez to leave 20 to 30 minutes earlier,
Hafemeister's testimony that he had intended Martinez not to come back until he had "slept it off,"
and Bost and Haffemeister's testimony that the door was closed when Martinez's reentered. 
Furthermore, Hafemeister and Bost both testified that they yelled repeatedly at Martinez that he
needed to leave once they discovered his presence.

 The evidence contrary to the verdict includes Martinez and Hafemeister's general
understanding that Martinez could enter when the door was open, Stephanie's testimony that the
door was open, the fact that the two couples had planned to eat together that evening, and the fact
that Martinez had been in and out of Hafemeister's apartment frequently on the afternoon in
question. Additionally, Hafemeister's testimony seems to indicate that he did not immediately tell
Martinez to leave upon discovering his presence in the apartment. However, Hafemeister also
testified that he asked what Martinez was doing there and told Martinez to leave within a few
moments of finding him in his apartment. The State also questioned the inference that Martinez was
returning for dinner--there was evidence that he had knocked over the plate of enchiladas they had
planned to eat. Further, the fact that Martinez was carrying a knife may be circumstantial evidence
of his awareness that he was not welcome in Hafemeister's apartment. The State also impeached
Stephanie's testimony that the door was open by alluding to the fact that she was inside her
apartment at the time that Martinez reentered the Hafemeister apartment. However, Stephanie
testified that she could see if the door was open from her vantage point inside the apartment. Given
the evidence and the reasonable inferences available, the jury's finding of lack of consent meets the
beyond-a-reasonable-doubt standard and cannot be deemed "clearly wrong and unjust." See Zuniga, 
2004 WL 840786, at *7.


Intent to commit aggravated assault

 Martinez asserts in his second point of error that there is not factually sufficient
evidence to support a finding that he entered Hafemeister's residence with the intent to commit
aggravated assault. The intent to commit a felony or a crime of theft must exist at the time of and
accompany the entry into the habitation. Coleman v. State, 832 S.W.2d 409, 413 (Tex.
App.--Houston [1st Dist.] 1992, pet. ref'd). The jury is exclusively empowered to determine the
issue of intent, and the events of a burglary may imply the intent with which the burglar entered. 
Moreno v. State, 702 S.W.2d 636, 641 (Tex. Crim. App. 1986). Courts have continually held that
entry into a home while carrying a weapon, coupled with threats against the inhabitant, constitute
both legally and factually sufficient evidence of intent to commit aggravated assault. Macri v. State,
12 S.W.3d 505, 508 (Tex. App.--San Antonio 1999, pet. ref'd) (legal and factual sufficiency
review); Williamson v. State, 716 S.W.2d 591, 593 (Tex. App.--Corpus Christi 1986, pet. ref'd)
(legal sufficiency review); see also Coleman, 832 S.W.2d at 413 (court stated in dicta that had
appellant been charged with intent to commit aggravated assault, there would have been sufficient
evidence to convict).

 Again, we conduct a factual sufficiency review by asking whether under a neutral
review of all the evidence, both for and against the finding of guilt, the evidence supporting proof
of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence
in the jury's determination. See Johnson, 23 S.W.3d at 7. In this case, there was evidence that
Martinez entered Hafemeister's home without his permission, after an altercation with Hafemeister,
after being explicitly asked to leave; after having an altercation with Virginia in which he accused
her of infidelity with Hafemeister; and after throwing the plate of enchiladas the couples were to eat
on the floor and knocking holes in the walls of the Martinezes' apartment. Martinez was drunk and
carrying a steak knife in his back pocket. He did not knock on the door or gain permission to enter. 
He was again told to leave by Hafemeister but refused. Martinez then threatened to "stick"
Hafemeister with his knife.

 Martinez's contrary evidence includes testimony by Bost that although Martinez
entered the apartment with a steak knife in his back pocket, he did not point it at the inhabitants. The
State countered this with testimony by Bost that she was not in the apartment the entire time and
testimony by Officer Vollmer, that when he arrived on the scene, he saw Martinez holding a knife
in a position that indicated he was ready to strike. Martinez contends that by the time Officer
Vollmer arrived, Hafemeister had threatened Martinez with a knife, and thus Vollmer's testimony
does little to show intent at the time Martinez entered the apartment. Hafemeister also testified that
Martinez did not actually point the knife at him, but that he held it in his hand behind his leg. 
Martinez further points to evidence that Hafemeister was the first one to pick up a knife and that
Martinez did not get the knife from his pocket until Hafemeister told him, "If he was going to use
it, use it." However, Hafemeister further testified that he only made this comment after he had put
down his own knife. Martinez asserts that the evidence supports his argument that he only carried
the knife into the apartment for self defense because he knew that Hafemeister routinely carried a
knife. Ultimately, Martinez's reliance on self defense makes little sense given that he entered the
apartment of Hafemeister after being asked to leave in the first place. We hold, given the totality of
the evidence including the reasonable inferences from the circumstances, that there is factually
sufficient evidence to support the jury's finding that Martinez entered Hafemeister's residence with
the intent to commit aggravated assault.


CONCLUSION


 We affirm Martinez's conviction of burglary with intent to commit aggravated
assault.



 

 Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: August 12, 2004

Do Not Publish

1. See, e.g., Gonzales v. State, 931 S.W.2d 574 (Tex. Crim. App. 1974) (defendant charged
with burglary did not have valid consent to enter his girlfriend's home; consent given by girlfriend
was not "effective" because girlfriend was not legally authorized to act for owners, her parents).
2. But see Ellett v. State, 607 S.W.2d 545, 550. (Tex. Crim. App. 1980) (appearing to suggest
that testimony of property owner as to his subjective desire regarding consent is legally sufficient
evidence of absence of consent); see also Zarate v. State, 2004 Tex. App. LEXIS 4592 (Tex.
App.--Houston [1st Dist.] May 20, 2004, no pet.).
3. Additionally, the fact that Martinez was carrying a knife might be further circumstantial
evidence of his awareness that he was not welcome in Hafemeister's apartment.