# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00157-CR

**Samuel Martinez a/k/a Sammy Martinez, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT
NO. 2002-046, HONORABLE RON CARR, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Samuel Martinez (Martinez) of burglary with intent to commit aggravated assault and sentenced him to forty years' imprisonment. *See* Tex. Pen. Code Ann. § 22.02 (West Supp. 2004), § 30.02 (West 2003). Martinez claims on appeal that the evidence was legally and factually insufficient to support the jury's finding that he entered the home of the alleged victim without the victim's consent, and that the evidence was factually insufficient to support the finding that he had the intent to commit aggravated assault. We affirm the judgment of conviction.

## BACKGROUND

Martinez lived with his wife, Virginia Martinez (Virginia), in an apartment complex in Lockhart. Stephanie Martinez (Stephanie), who is unrelated, lived in the apartment beneath

Martinez and Virginia. Donald Hafemeister (Hafemeister) and his common law wife, Stacy Bost (Bost), lived in the apartment next to Stephanie's.

Martinez, Virginia, Stephanie, Hafemeister, and Bost socialized often, and Martinez made frequent social visits to Hafemeister's apartment. Hafemeister testified that he and Bost typically left their front door ajar during the day, and that this was a sign inviting Martinez, Virginia, and Stephanie to enter their apartment and visit. He testified that even when the door was open, Martinez, Virginia, and Stephanie would customarily knock or announce their presence in some fashion when they entered Hafemeister's apartment.

On August 4, 2001, Martinez and Hafemeister spent the afternoon drinking in Hafemeister's apartment. Virginia was in the Martinezes' apartment cooking enchiladas in preparation for a dinner the couple had planned that evening. Hafemeister testified that he and Martinez became intoxicated. The friendly gathering took an unfriendly turn, however, when Martinez said the word "bitch" at a time when Bost was walking by the two men. Hafemeister confronted Martinez, asking him if his comment was directed at Bost. Martinez denied Hafemeister's accusation, claiming that he was referring to his own wife, Virginia. Hafemeister told Martinez that he thought they had had too much to drink and that Martinez needed to leave. Martinez complied. Hafemeister testified that, at that point, Martinez was not welcome in Hafemeister's apartment until after he had "slept it off." However, Hafemeister did not explicitly relate his intent to Martinez.

Martinez went back to his apartment. He began arguing with Virginia, asking her if Hafemeister was her boyfriend. The argument escalated to the point that Virginia left the apartment

2

to go to her mother's house. Virginia testified that when she returned about an hour later the apartment was a mess—the food she had been cooking was on the floor and several holes had been knocked into the wall.

Meanwhile, about twenty to thirty minutes after he had been told to leave, Martinez returned to Hafemeister's apartment and entered through the front door. He carried a steak knife in the back pocket of his pants. He asked Hafemeister why he had talked to him "that way." Although Stephanie testified that Hafemeister's front door had been open, Hafemeister and Bost both testified that it had been closed. Hafemeister testified that Martinez had returned with an angry demeanor and was argumentative. Bost and Stephanie noticed Martinez's knife. Stephanie called the police, and, from the front door, Bost warned Hafemeister that Martinez had a knife. In response, Hafemeister picked up an opened lock-blade knife that he frequently carried, but put it back down after a moment. Martinez told Hafemeister that he was going to "stick" him. Hafemeister picked up a Coca-Cola bottle and asked Martinez if he wanted to take the dispute outside. Martinez responded, picking up another Coca-Cola bottle. At that point, Officer Vollmar of the Lockhart Police Department arrived. Vollmar testified that, upon his arrival, he saw Martinez clutching a knife in his right hand, blade down, standing less than arm's length from Hafemeister. Vollmar drew his handgun and three times ordered Martinez to drop his weapon before Martinez complied. Martinez dropped his knife and the Coca-Cola bottle. Vollmar arrested Martinez and charged him with criminal trespass.

Martinez was indicted for aggravated assault and burglary with intent to commit aggravated assault. He was acquitted of the former charge and convicted of the latter. Martinez's

3

punishment range was enhanced by two prior felony convictions, and he was sentenced to forty years' imprisonment.

## DISCUSSION

The elements of burglary are: (1) a person; (2) without effective consent of the owner; (3) enters a habitation or building; (4) not then open to the public; (5) with the intent to commit a felony, theft, or assault. Tex. Pen. Code Ann. § 30.02(a)(1) (West 2003); *see Alba v. State*, 905 S.W.2d 581, 584 (Tex. Crim. App. 1995). Martinez appeals asserting that (1) there is neither legally nor factually sufficient evidence to support the jury's finding that he entered Hafemeister's residence without consent; and (2) there is not factually sufficient evidence to support a finding that he entered Hafemeister's residence with the intent to commit a felony—in this case, aggravated assault.

### Standards of review

The test for legal sufficiency is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Griffin v. State*, 614 S.W.2d 155, 158 (Tex. Crim. App. 1981). This standard applies in both direct and circumstantial evidence cases. *See Burden v. State*, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).

When conducting a factual sufficiency review, the evidence is not viewed in the light most favorable to the verdict. Instead, all the evidence is considered equally, including the testimony

4

of defense witnesses and the existence of alternative hypotheses. *See Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *See Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). Appellate courts exercise their fact jurisdiction only to prevent a manifestly unjust result, and are not free to reweigh the evidence and set aside a verdict merely because a different result is more reasonable. *See Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). They must maintain appropriate deference to the jury's verdict by finding error only when the record clearly indicates that the verdict is wrong and manifestly unjust. *See Johnson*, 23 S.W.3d at 7; *Cain*, 958 S.W.2d at 407.

The court of criminal appeals recently clarified how the reasonable doubt standard at trial influences the factual sufficiency standard of review:

> There are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable doubt standard could not have been met, so the guilty verdict should not stand. This standard acknowledges that evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can "outweigh" the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard.

*Zuniga v. State*, No. 539-02, 2004 WL 840786, at * 7 (Tex. Crim. App. Apr. 21, 2004).

5

**Consent**

Martinez asserts in his first point of error that the evidence is legally and factually insufficient to support the jury's finding that he entered Hafemeister's residence without his consent. "Effective consent" is defined in the penal code to "include[] consent by a person legally authorized to act for the owner." Tex. Pen. Code Ann. § 1.07(a)(19) (West Supp. 2004). There is no dispute that Hafemeister was legally authorized to give or withhold "effective" consent to enter his apartment;[1] thus, we need consider only whether Martinez had "consent" to enter. In the penal code, "'[c]onsent' means assent in fact, whether express or apparent." *Id*. § 1.07(a)(11).

Martinez places great emphasis on what he characterizes as the custom or practice of Hafemeister and him to permit each other to enter their respective apartments. He urges that the consent issue is properly framed as whether there is evidence that he was *aware* that Hafemeister had *revoked* his consent for Martinez to enter, and that the evidence is legally and factually insufficient to support such a finding. Assuming without deciding this view of the consent element is correct,[2] we hold that there is both legally and factually sufficient evidence to show that Martinez did not have Hafemeister's effective consent to enter his residence.

As for our legal sufficiency review, the following evidence was such that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt:

---

[1] *See, e.g.*, *Gonzales v. State*, 931 S.W.2d 574 (Tex. Crim. App. 1974) (defendant charged with burglary did not have valid consent to enter his girlfriend's home; consent given by girlfriend was not "effective" because girlfriend was not legally authorized to act for owners, her parents).

[2] *But see Ellett v. State*, 607 S.W.2d 545, 550. (Tex. Crim. App. 1980) (appearing to suggest that testimony of property owner as to his subjective desire regarding consent is legally sufficient evidence of absence of consent); *see also Zarate v. State*, 2004 Tex. App. LEXIS 4592 (Tex. App.—Houston [1st Dist.] May 20, 2004, no pet.).

**!** Hafemeister's comments to Martinez that "they'd had too much to drink" and that "he'd better leave";

**!** Hafemeister's and Bost's testimony that the door was closed when Martinez returned;

**!** Testimony that it was the couples' custom to allow each other into their respective apartments only when the door was open;

**!** Testimony that even when the door was ajar, it was the custom to knock before entering;

**!** Hafemeister's testimony that he did not intend Martinez to reenter at that time.[3]

The reasonable implication from Hafemeister's command that Martinez leave as they had had too much to drink is that Martinez was not to come back until he had sobered up. The record shows that Martinez had not knocked or made his presence known in any way upon reentry, as was the custom. Finally, there was evidence that the front door was closed and that it was customary to enter only when the door was ajar. When viewing this evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Therefore, the evidence is legally sufficient to support the finding that Martinez knew he did not have Hafemeister's consent to enter.

Likewise, the evidence was factually sufficient to support a finding of lack of consent. We are mindful in our determination that appellate courts are to exercise their fact jurisdiction only to prevent a manifestly unjust result, and are not free to reweigh the evidence and set aside a verdict merely because a different result is more reasonable. *See Cain v. State*, 958 S.W.2d 404, 407 (Tex.

---

[3] Additionally, the fact that Martinez was carrying a knife might be further circumstantial evidence of his awareness that he was not welcome in Hafemeister's apartment.

7

Crim. App. 1997). They must maintain appropriate deference to the jury's verdict by finding error only when the record clearly indicates that the verdict is wrong and manifestly unjust. *See Johnson*, 23 S.W.3d at 7; *Cain*, 958 S.W.2d at 407.

Viewing the totality of the evidence in a neutral light under a factual sufficiency analysis, we conclude that the evidence was sufficient to support the verdict. In support of the verdict is Hafemeister's testimony that he had told Martinez to leave 20 to 30 minutes earlier, Hafemeister's testimony that he had intended Martinez not to come back until he had "slept it off," and Bost and Haffemeister's testimony that the door was closed when Martinez's reentered. Furthermore, Hafemeister and Bost both testified that they yelled repeatedly at Martinez that he needed to leave once they discovered his presence.

The evidence contrary to the verdict includes Martinez and Hafemeister's general understanding that Martinez could enter when the door was open, Stephanie's testimony that the door was open, the fact that the two couples had planned to eat together that evening, and the fact that Martinez had been in and out of Hafemeister's apartment frequently on the afternoon in question. Additionally, Hafemeister's testimony seems to indicate that he did not immediately tell Martinez to leave upon discovering his presence in the apartment. However, Hafemeister also testified that he asked what Martinez was doing there and told Martinez to leave within a few moments of finding him in his apartment. The State also questioned the inference that Martinez was returning for dinner—there was evidence that he had knocked over the plate of enchiladas they had planned to eat. Further, the fact that Martinez was carrying a knife may be circumstantial evidence of his awareness that he was not welcome in Hafemeister's apartment. The State also impeached

Stephanie's testimony that the door was open by alluding to the fact that she was inside her apartment at the time that Martinez reentered the Hafemeister apartment. However, Stephanie testified that she could see if the door was open from her vantage point inside the apartment. Given the evidence and the reasonable inferences available, the jury's finding of lack of consent meets the beyond-a-reasonable-doubt standard and cannot be deemed "clearly wrong and unjust." *See Zuniga*, 2004 WL 840786, at *7.

**Intent to commit aggravated assault**

Martinez asserts in his second point of error that there is not factually sufficient evidence to support a finding that he entered Hafemeister's residence with the intent to commit aggravated assault. The intent to commit a felony or a crime of theft must exist at the time of and accompany the entry into the habitation. *Coleman v. State*, 832 S.W.2d 409, 413 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). The jury is exclusively empowered to determine the issue of intent, and the events of a burglary may imply the intent with which the burglar entered. *Moreno v. State*, 702 S.W.2d 636, 641 (Tex. Crim. App. 1986). Courts have continually held that entry into a home while carrying a weapon, coupled with threats against the inhabitant, constitute both legally and factually sufficient evidence of intent to commit aggravated assault. *Macri v. State*, 12 S.W.3d 505, 508 (Tex. App.—San Antonio 1999, pet. ref'd) (legal and factual sufficiency review); *Williamson v. State*, 716 S.W.2d 591, 593 (Tex. App.—Corpus Christi 1986, pet. ref'd) (legal sufficiency review); *see also Coleman*, 832 S.W.2d at 413 (court stated in dicta that had appellant been charged with intent to commit aggravated assault, there would have been sufficient evidence to convict).

9

Again, we conduct a factual sufficiency review by asking whether under a neutral review of all the evidence, both for and against the finding of guilt, the evidence supporting proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *See Johnson*, 23 S.W.3d at 7. In this case, there was evidence that Martinez entered Hafemeister's home without his permission, after an altercation with Hafemeister, after being explicitly asked to leave; after having an altercation with Virginia in which he accused her of infidelity with Hafemeister; and after throwing the plate of enchiladas the couples were to eat on the floor and knocking holes in the walls of the Martinezes' apartment. Martinez was drunk and carrying a steak knife in his back pocket. He did not knock on the door or gain permission to enter. He was again told to leave by Hafemeister but refused. Martinez then threatened to "stick" Hafemeister with his knife.

Martinez's contrary evidence includes testimony by Bost that although Martinez entered the apartment with a steak knife in his back pocket, he did not point it at the inhabitants. The State countered this with testimony by Bost that she was not in the apartment the entire time and testimony by Officer Vollmer, that when he arrived on the scene, he saw Martinez holding a knife in a position that indicated he was ready to strike. Martinez contends that by the time Officer Vollmer arrived, Hafemeister had threatened Martinez with a knife, and thus Vollmer's testimony does little to show intent at the time Martinez entered the apartment. Hafemeister also testified that Martinez did not actually point the knife at him, but that he held it in his hand behind his leg. Martinez further points to evidence that Hafemeister was the first one to pick up a knife and that Martinez did not get the knife from his pocket until Hafemeister told him, "If he was going to use

10

it, use it." However, Hafemeister further testified that he only made this comment after he had put down his own knife. Martinez asserts that the evidence supports his argument that he only carried the knife into the apartment for self defense because he knew that Hafemeister routinely carried a knife. Ultimately, Martinez's reliance on self defense makes little sense given that he entered the apartment of Hafemeister after being asked to leave in the first place. We hold, given the totality of the evidence including the reasonable inferences from the circumstances, that there is factually sufficient evidence to support the jury's finding that Martinez entered Hafemeister's residence with the intent to commit aggravated assault.

## CONCLUSION

We affirm Martinez's conviction of burglary with intent to commit aggravated assault.

_____

Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: August 12, 2004

Do Not Publish

11