Opinion issued December 1, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00318-CR

———————————

Darrall Earl Houston, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 400th District Court

Fort Bend County, Texas



Trial Court Case No. 49710B

 



 

MEMORANDUM OPINION

          A
jury convicted Darrall Earl Houston of burglary of a habitation with intent to
commit aggravated assault and sentenced him to fifty years’ confinement.[1] In his sole issue, Houston
challenges the legal sufficiency of the evidence. We affirm the trial court’s
judgment.

Background

          Late
one evening, Q. Durisseau was at his home in Missouri City, Texas, where he
lived with his girlfriend, his son, and his daughter. Durisseau testified that
he was in the kitchen making cereal when he heard loud kicks at his back door.
Durisseau believed that someone was trying to break into his house. He ran from
the kitchen to the couch in his living room, where he kept a nine millimeter handgun.
As Durisseau grabbed the gun from under his couch, a third kick caused the door
to swing open, revealing two masked men carrying handguns. Durisseau testified
that one of the men entered the house, and Durisseau shot him. He also testified
that one of the gunmen fired his gun, but he could not tell which one. After
Durisseau shot one of the gunmen, the other gunman ran away. Durisseau’s gun
jammed, and the injured gunman stumbled out of the house while Durisseau tried
to reload his gun. Durisseau did not chase after them. 

Once the two men were out of sight,
Durisseau checked on his son and then called his girlfriend to tell her what
had happened. He did not contact the police. Because of a prior conviction for
possession of marijuana, Durisseau was not allowed to have a gun. He also had a
plastic bag containing several ounces of marijuana. Durisseau attempted to get
rid of the gun and marijuana before the police arrived. He hid the gun in some
bushes across the street from his house and threw the marijuana in the gutter.

          That
same night, A. Murguia was driving through Durisseau’s neighborhood on his way
home from picking up his fiancé at school. Murguia testified that he witnessed a
man stumbling around along the curb and falling down near a storm drain. He
also heard something metal hit the ground. Murguia assumed that the man was
intoxicated or high. Murguia and his girlfriend went into her house, coming out
again later when an emergency crew and the police arrived.

          T.
Robinson lives in Durisseau’s neighborhood and was outside in his driveway that
evening. He saw two men come running out from behind some houses. One of the
men went down the sidewalk to sit down near the storm drain while the other man
kept running away. Like Murguia, he testified that he heard something metal hit
the ground.

          M.
Braswell of the Missouri City Fire Department arrived at the scene to find
Houston lying on his back in a park, near the storm drain described by Murguia
and Robinson. Braswell testified that as they treated Houston for his gunshot
wound, he told them he was shot in a drive-by shooting. Braswell saw that there
was something hidden in the nearby storm drain. When Missouri City emergency
personnel lifted the grate from the storm drain, they found a pistol, ski mask,
and pair of gloves inside the drain. 

Sergeant J. York was one of the
officers dispatched to the scene. Both Murguia and Robinson were at the scene
and spoke to York about what they witnessed. York testified that he also spoke
to Houston briefly and that Houston stated that he did not know how he got
shot.

The police recovered Durisseau’s
bag of marijuana from another storm drain near his house and his gun from the
bushes. At Durisseau’s house, police recovered two nine millimeter shell casings
inside the house and two .45 caliber shell casings outside the back door. The
.45 caliber shell casings did not match the gun found in the storm drain near
Houston. The police took photographs of Durisseau’s back door, which was dented
and the frame of which was broken. They also took photographs of the blood on
Durisseau’s living room carpet and a bullet hole in his living room ceiling. At
trial, Durisseau testified that the damage to the door, the blood on the
carpet, and the bullet hole were all a result of the break in, his shooting one
of the masked gunmen, and one of the gunmen firing into the house.

Detective J. Joseph spoke to
Houston about the incident while Houston was at the hospital. Houston initially
told Joseph that he was at the park waiting for his friend, “G,” when multiple
men drove by in a car and fired shots at him. After Joseph expressed doubts
about the veracity of Houston’s story, Houston agreed to “tell [Joseph] the
truth.” Houston then said that he and “G” 
were planning to kick in the door and break into the house of a man who
was cheating with “G’s” girlfriend so that they could ask him some questions.
Houston then admitted to kicking in Durisseau’s door, getting shot by
Durisseau, and fleeing the scene. Houston admitted that he had a gun when he
broke into Durisseau’s home but denied wearing the ski mask. Houston said that
“G” wanted him to wear the ski mask but he refused. 

Detective G. Nelson also spoke to
Houston at the hospital. Houston admitted to the break in, that he had a gun,
and that he had thrown his “stuff” into the gutter.

          Houston’s
testimony about what happened differed significantly from what he previously
told police and emergency personnel. Houston testified that he went to Missouri
City with “G” to purchase marijuana. He testified that they did not kick in the
door but, rather, knocked on the door and were invited in by Durisseau.
According to Houston, the three of them smoked weed together and Durisseau
stated that he would have a friend bring over the ten pounds of weed Houston
wanted to buy. Houston testified that “G,” or Gerald, went out the back door to
take a phone call, and while he was out there, Durisseau pulled out a handgun.
Houston testified that Durisseau told him that he wanted to take a shower and
asked him to wait outside with Gerald. According to Houston, an unknown man
approached him and Gerald while they were outside behind Durissau’s house and
tried to rob them at gunpoint. Houston testified that he grabbed the armed man
and was shot in the struggle. He stated that he then walked to where Gerald’s
car had been parked but found the car gone. He then stumbled down the street to
where he was later found by emergency personnel. Houston denied having disposed
of a gun and ski mask in the nearby sewer. 

Houston admitted to having told Detective
Joseph that he and Gerald had gone “to go f*** this guy who was supposed to
have been sleeping with [Gerald’s] girlfriend,” but testified that he was lying
to Joseph at that time. He denied having admitted to Detective Nelson that he
had a gun or that he had thrown anything down the storm drain. In his recount
of his communications with emergency personnel on the scene, Houston did not
tell Braswell that he was shot in a drive-by shooting. 

          The
jury found Houston guilty of burglary of a habitation with intent to commit
aggravated assault.

Standard of Review

We review Houston’s challenge to the legal sufficiency of
the evidence under the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 318–20, 99 S. Ct.
2781, 2788–89 (1979). See Ervin v. State, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet.
ref’d) (citing Brooks v. State,
323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010)). Under the Jackson
standard, evidence is insufficient to support a conviction if, considering all
the record evidence in the light most favorable to the verdict, no rational
factfinder could have found that each essential element of the charged offense
was proven beyond a reasonable doubt. See Jackson, 443 U.S. at 317, 318–19, 99 S. Ct. at 2788–89; Laster v.
State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009). Evidence is insufficient under this standard in four
circumstances: (1) the record contains no evidence probative of an element of
the offense; (2) the record contains a mere “modicum” of evidence probative of
an element of the offense; (3) the evidence conclusively establishes a
reasonable doubt; and (4) the acts alleged do not constitute the criminal
offense charged. See Jackson,
443 U.S. at 314, 318 n.11, 320, 99 S.Ct. at 2786, 2789 & n. 11; Laster, 275 S.W.3d at 518; Williams v. State, 235 S.W.3d 742, 750
(Tex. Crim. App. 2007). 

The Jackson standard
gives full play to the responsibility of the factfinder to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  See Jackson, 443 U.S. at 318–19, 99
S. Ct. at 2788–89; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007).  An appellate court presumes the factfinder resolved any
conflicts in the evidence in favor of the verdict and defers to that
resolution, provided that the resolution is rational.  See Jackson,
443 U.S. at 326, 99 S. Ct. at 2793. If an appellate court finds the evidence insufficient under
this standard, it must reverse the judgment and enter an order of acquittal. See
Tibbs v. Florida, 457 U.S.
31, 41, 102 S. Ct. 2211, 2218 (1982).

Legal Sufficiency of the Evidence

          In his sole issue, Houston
contends that, although there was sufficient evidence to prove that Houston entered
Durisseau’s home without consent, the evidence was not legally sufficient to
support the jury’s finding that he had the intent to commit aggravated assault
at the time of entry. 

          A person commits burglary if he “enters
a habitation . . . with intent to commit a felony, theft or an assault[.]” Tex. Penal Code Ann. § 30.02(a)(1)
(West 2011). A person commits an assault if he “intentionally or knowingly
threatens another with imminent bodily injury” or “intentionally, knowingly or
recklessly causes bodily injury to another.” Id. § 22.01(a)(1), (2). If the
offender “uses or exhibits a deadly weapon” in committing the assault, it is an
aggravated assault. Id. §
22.02(a)(2). The
State had to prove that Houston had the intent to commit an aggravated assault
at the time he entered Durisseau’s home. See
LaPoint v. State, 750 S.W.2d 180, 182 (Tex. Crim. App.
1986).

Intent is an essential element of the offense of burglary,
which the State must prove beyond a reasonable doubt; it may not be left simply
to speculation and surmise. LaPoint, 750 S.W.2d at 182. However, intent is a question of fact for
the jury, and the jury may infer intent from a defendant’s conduct and the
surrounding facts and circumstances. See
id. In determining whether Houston threatened Durisseau with imminent
bodily injury, the crucial inquiry is whether he “acted in such a manner as would
under the circumstances portend an immediate threat of danger to a person of reasonable
sensibility.” Olivas v. State,
203 S.W.3d 341, 347 (Tex. Crim. App. 2006). “[O]ne’s acts are generally
reliable circumstantial evidence of one’s intent[.]” Laster, 275 S.W.3d at 524 (quoting Rodriguez v. State, 646 S.W.2d 524, 527
(Tex. App.—Houston [1st Dist.] 1982, no pet.)). 

The record contains both direct and circumstantial evidence
that Houston intended to threaten or cause bodily injury to Durisseau when he
broke into Durisseau’s house. First, there is evidence that Houston kicked in
Durisseau’s back door and entered Durisseau’s home without permission at
approximately 11 p.m., while wearing a ski mask and brandishing a gun.[2]
Cf. Macri v. State, 12 S.W.3d 505, 507–08 (Tex. App.—San Antonio
1999, pet. ref’d) (holding evidence sufficient to support conviction for
burglary with intent to commit aggravated assault, even though accused left
house without actually attempting to injure anyone, when accused broke into
house through window carrying handgun and knife and continually asked, “Where
is she?” before leaving). Such conduct would “portend an immediate threat of
danger to a person of reasonable sensibility.” Olivas, 203 S.W.3d at 347. 

Second, there is evidence that Houston told police officers
that they broke into Durisseau’s home to “f***” Durisseau in retaliation for
sleeping with Gerald’s girlfriend. While Houston testified that he was lying when
he made this statement to Detective Joseph, the jury was free to believe the
story Houston told shortly after the event rather than the story he told at trial.
See Chambers v. State,
805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (stating rule that jury is sole
judge of credibility of witnesses, and may choose to believe or disbelieve all
or any part of witness’s testimony). This is particularly true in light of the
physical evidence—such as the damage to Durisseau’s back door, the blood on
Durisseau’s carpet, the bullet hole in Durisseau’s ceiling, and the shells from
Durisseau’s gun found inside Durisseau’s house—which is more consistent with
Houston getting shot after kicking in Durisseau’s back door and entering
Durisseau’s living room than with Houston getting shot on the back porch after
entering and exiting Durisseau’s home with permission as part of a drug deal. See Coleman
v. State, 832 S.W.2d 409, 414 (Tex. App.—Houston [1st Dist.] 1992,
pet. ref’d) (stating that jury could have disregarded accused’s entire
statement of what happened when it was inconsistent with physical evidence and
testimony of others).

With respect to the “aggravated” element of the intended
assault, there is legally sufficient evidence that Houston exhibited a gun.
Durisseau testified that Houston had a gun when he broke into Durisseau’s home.
Two witnesses saw Houston stumbling down the street in Durisseau’s neighborhood
and stop at a storm drain, at which time they heard something that sounded like
metal hitting the ground. The police retrieved a gun, a mask, and gloves from
the same storm drain. Houston was laying in the grass near the storm drain when
he was discovered by emergency personnel. Detective Nelson testified that
Houston admitted to having thrown his “stuff” down the storm drain. Although
Houston denied having made this statement, the jury was free to credit the
officer’s testimony and discredit Houston’s testimony. See Chambers, 805 S.W.2d at 461.

We overrule Houston’s sole issue.

Conclusion

We hold that the evidence is legally sufficient to support
the jury’s verdict. We therefore affirm the trial court’s judgment.

 

 

                                                                   Harvey Brown

                                                                   Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           Tex. Penal Code Ann. §§ 30.02, 22.01–22.02 (West
2011).





[2]           Houston argues that an intent to
threaten Durisseau cannot be inferred from “the mere fact of entry into the
home wearing masks and carrying guns” because “the two intruders could just as
equally have had the intent to commit theft instead.”  But an intent to threaten imminent bodily
injury and an intent to commit theft are not mutually exclusive. If there is
evidence from which the jury could reasonably infer that Houston intended to
communicate an imminent threat of bodily harm to Durisseau, the evidence is
legally sufficient to support the jury’s verdict in this respect, regardless of
whether the evidence could also support an inference of an intent to steal from
Durisseau.