**Steven L. RUSSELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–00–00638–CR.

Court of Appeals of Texas,
San Antonio.

Sept. 25, 2002.

Discretionary Review Refused
Jan. 22, 2003.

2002 opinion and judgment and substitute this opinion and judgment in their place. The trial court's judgment is affirmed.

## Factual and Procedural Background

Steven Russell was serving a prison sentence in the Estelle Unit of the Texas Department of Criminal Justice, Institutional Division. On December 13, 1996, in the infirmary restroom, another inmate noticed Russell change into doctor's clothing. Russell, dressed as a physician, left the unit and was given a ride to a local Denny's Restaurant and from there, to a hospital in Houston. Russell was found in Biloxi, Mississippi on December 23, 1996, and returned to Texas.

Russell was charged with felony escape. A jury found him guilty of the charged offense and sentenced him to 99 years in prison. Russell appeals, arguing the evidence is legally and factually insufficient to support his conviction, he was denied his right to a speedy trial, and he received ineffective assistance of counsel at trial.

Frank Blazek, Smither, Martin, Henderson & Blazek, P.C., Huntsville, for appellant.

Candace Norris, Plainview, Kelly T. Weeks, Huntsville, Special Prosecution Unit, for appellee.

Sitting: SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: KAREN ANGELINI, Justice.

Steven L. Russell appealed a jury verdict finding him guilty of escape. In our original opinion, we affirmed the trial court's judgment. On August 19, 2002, Russell filed a Petition for Discretionary Review. We withdraw our August 28,

## Sufficiency of the Evidence

### A. Standard of Review

In his first issue, Russell asserts the jury's verdict is not supported by legally or factually sufficient evidence. In reviewing the legal sufficiency of the evidence, we review the relevant evidence, both direct and circumstantial, in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Macri v. State*, 12 S.W.3d 505, 507 (Tex.App.-San Antonio 1999, pet. ref'd). In doing so, we ask whether a rational trier of fact could have found all of the essential elements of the offense to arrive at the challenged finding beyond a reasonable doubt. *Jack-*

*son*, 443 U.S. at 318, 99 S.Ct. 2781; *Macri*, 12 S.W.3d at 507.

In considering the factual sufficiency of the evidence, this court views all of the evidence in a neutral light, setting aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 7; *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). We review the jury's deliberation and weighing of the evidence in a deferential manner in order to avoid substituting our judgment for the jury's. *Johnson*, 23 S.W.3d at 7; *Clewis*, 922 S.W.2d at 133.

B. *Summary of the Evidence*

Fernando E. Figueroa was the Warden of the Estelle Unit on December 13, 1996. Figueroa testified that Russell was in his custody on that date and that he never gave Russell consent to leave the Unit.

Mitchell Garrett, an inmate at TDC, knew Russell. Garrett was in the infirmary on December 13, 1996. Garrett noticed Russell in the infirmary restroom changing into doctor's clothing. Garrett witnessed Russell clip an identification tag to his shirt and leave the infirmary. Carl Ogle is also an inmate at TDC and was acquainted with Russell. According to Ogle, he and Russell shared a prison cell. On December 11, 1996, Ogle noticed Russell had collected extra necessities, including several blankets and extra sets of clothes. Ogle also noticed green ink stains on Russell's blankets and that Russell had nine or ten felt-tip markers.

Bobby Rushing lives near the Estelle Unit. On December 13, 1996, at 5:30 a.m., Rushing heard his door bell ring. A man dressed as a doctor was at the door. The man told Rushing that he had had an alcohol related accident and needed a ride into town. Rushing took the man to a Denny's Restaurant at approximately 6:00

a.m. The next morning, Rushing found a shirt similar to the one the man was wearing in his barn.

Margie Frank Allen is a cab driver. She testified that on December 13, 1996, she picked up Russell at Denny's and drove him to Hermann Hospital in Houston. Russell told her he was going into the hospital to get fare money, but he never returned.

Christy Putnam has been a TDC guard since May of 1996. On December 13, 1996, she was working at the control picket at the Estelle Unit. Putnam remembered allowing a person to leave the Unit dressed in medical attire with a medical identification tag. Putnam could not testify that it was Russell who left the prison unit disguised as a physician.

Captain David Hosea runs the Regional Medical Facility at the Estelle Unit. At 7:00 a.m. on the morning of December 13, 1996, prison officials realized an inmate was missing. After conducting a "bed book," officials discovered Russell was missing. After thoroughly searching the area, Russell could not be found. Internal Affairs took over the search. Ultimately, it was determined that Russell had passed through the control picket and out through the front gate of the Unit.

Richard Voight, a corrections officer for TDC, received a phone call from the radio picket officer, informing him a medical employee was walking to the parking lot to his vehicle. Voight then observed a person in green medical attire approach his picket. He did not, however, see where the individual went. Voight believes he allowed an inmate to leave the premises.

John Pugh was a dog sergeant at the Estelle Unit on December 13, 1996. Pugh conducted a search of the Unit grounds with his dog. The dog picked up a scent,

which led them to the main entrance. The dog, however, lost the scent.

Glen Collins is a correctional officer and was supervising the fence squad at the Estelle Unit on December 17, 1996. As they were picking up trash along the roadway, one of the inmates found an identification tag. Collins took the tag to Sergeant Pugh. According to Collins, the tag had been altered to look like an officer's tag.

Terry Cobbs is a fugitive investigator for the TDCJ's Inspector General's office. He testified that, on December 23, 1996, a United States Marshall found Russell in Biloxi, Mississippi. Cobbs brought Russell back to Texas from Mississippi.

A.P. Merillat, an investigator with the Special Prosecution Unit, is a fingerprint expert. On the day of trial, Merillat took Russell's fingerprints. Merillat compared Russell's fingerprints with another set of fingerprints contained in the pen packet of a person named Steven Russell. According to Merillat, the fingerprints were identical. Merillat, therefore, concluded "[t]he person that I took fingerprints from here in the courtroom, . . ., is the same person who made fingerprints in this pen packet." The State then introduced Exhibit 19, which includes information regarding Russell's prior conviction for escape. It indicates Russell was sentenced to serve twenty years for the offense.

## C. *Escape*

■ The offense of escape is comprised of three elements: (1) escape (2) from custody (3) after having been arrested for, charged with, or convicted of an offense. TEX. PEN.CODE ANN. § 38.06(a) (Vernon Supp.2002); *Scott v. State*, 672 S.W.2d 465, 466 (Tex.Crim.App.1984). Escape is defined as an "unauthorized departure from custody." TEX. PEN.CODE ANN. § 38.01(2) (Vernon Supp.2002); *Lawhorn v. State*,

898 S.W.2d 886, 890 (Tex.Crim.App.1995). Custody is not limited to actual, physical "hands-on" restraint, but in the context of escape, is more than the right to control; it implies a degree of physical limitation, restraint, or control the nature and scope of which depends on the facts of each case. *Lawhorn v. State*, 843 S.W.2d 268, 270 (Tex.App.-Austin 1992), *aff'd*, 898 S.W.2d 886 (Tex.Crim.App.1995).

Russell asserts that "[a] person who departs from custody by mistake on the part of the authorities does not commit the offense of escape." We have found no cases directly dealing with Russell's argument. However, case law interpreting Texas Rule of Appellate Procedure 42.4 offers some guidance to the resolution of this issue. Rule 42.4 authorizes an appellate court to dismiss an appeal when the appellant has escaped from custody pending the appeal. TEX.R.APP. P. 42.4. In this context, the Court of Criminal Appeals has defined "escape" to mean "to get oneself free from confinement or control." *Estep v. State*, 901 S.W.2d 491, 495 (Tex. Crim.App.1995). The court limited the application of the definition, stating "[b]*eing released* from custody by someone in authority, even when such release is not authorized by law, does not constitute 'getting oneself free from confinement.'" *Id.* The court, however, implied that if the record showed that an "Appellant departed from custody with awareness that the departure was not authorized (which can usually be made by setting out the circumstances of the departure)," it would be proper to conclude an individual had escaped. *Id.*

Here, the record demonstrates prison employees permitted Russell to leave the premises under the mistaken belief that he was a physician. Russell induced the employees' mistaken belief by disguising himself as a physician. Thus, the evidence

shows Russell knew he was being released improperly and he may therefore be classified as an "escapee," assuming the remaining elements of the offense are established.

■ Russell first asserts that the evidence is insufficient to show he previously was convicted of felony escape.[1] Specifically, he maintains the only evidence of his alleged felony conviction was State's Exhibit 19 and Merillat's testimony. Exhibit 19 includes: a business records affidavit; an offense information sheet, and fingerprint records. The offense information sheet includes pictures of Russell and sets out the offense committed-felony escape, the date the judgment was entered, and the sentence imposed. It further indicates that Russell pleaded guilty to the alleged offense. Merillat testified that the fingerprints included in Exhibit 19 match those he took from Russell during trial.

Furthermore, Figueroa, when asked whether Russell had any other disciplinary action taken against him during the time Figueroa was the Warden at the Estelle Unit, responded "The only thing I remember of Mr. Russell is he had a ten-year escape charge—I think it was 10 years—that he was actually doing time for." Russell put on no evidence to dispute the fact that he previously had been convicted of felony escape.

■ Russell also maintains on appeal that the evidence is insufficient to support the jury's finding that he was in Figueroa's custody at the time he escaped from the Estelle Unit. However, Figueroa testified that Russell was in his custody on December 13, 1996. Furthermore, Ogle's testimony demonstrates that Russell was an inmate at the Estelle Unit on December 13, 1996. And finally, Sylvia J. Piasta, the Chief of Classification at the Estelle Unit testified that Russell was incarcerated at the Estelle Unit in December of 1996.

Viewing this evidence in a light most favorable to the jury's verdict, we hold the jury could have found all of the essential elements necessary to an escape finding beyond a reasonable doubt. *Jackson,* 443 U.S. at 318, 99 S.Ct. 2781; *Macri,* 12 S.W.3d at 507. Similarly, viewing the evidence neutrally, the jury's finding is not so against the great weight and preponderance of the evidence so as to be manifestly unjust. *Johnson,* 23 S.W.3d at 7; *Clewis,* 922 S.W.2d at 129. Russell's first issue is overruled.

### Speedy Trial

■ Russell further contends he was denied his constitutional right to a speedy trial. In determining whether a defendant's right to a speedy trial has been violated, we balance four factors: (1) length of the delay; (2) reasons for the delay; (3) assertion of the right; and (4) prejudice to the defendant resulting from the delay. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Munoz,* 991 S.W.2d 818, 821 (Tex. Crim.App.1999)(en banc). The conduct of both the prosecutor and the defendant must be weighed in balancing the four factors, and no single factor is a necessary or sufficient condition to the finding of a speedy trial violation. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182; *Munoz,* 991 S.W.2d at 821. Review of these individual factors necessarily involves fact determinations and legal conclusions. *Johnson v. State,* 954 S.W.2d 770, 771 (Tex.Crim.App.1997). The balancing test as a whole, however, is

---

1. The indictment alleges Russell did then and there intentionally and knowingly escape from the custody of Fernando Figueroa, who was then and there Warden of the Estelle Unit of the Texas Department of Criminal Justice, Institutional Division, when the defendant was convicted of the offense of escape, a felony."

a legal question and thus is reviewed de novo. *Id.*

## 1. Length of the Delay

The length of the delay is the triggering mechanism for analysis of the other *Barker* factors. *Munoz,* 991 S.W.2d at 821. Further analysis is required if the length of the delay is "presumptively prejudicial." *State v. Rangel,* 980 S.W.2d 840, 843 (Tex.App.-San Antonio 1998, no pet.). The length of the delay is measured from the time the defendant is arrested or formally accused. *See Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.1992); *Mabra v. State,* 997 S.W.2d 770, 777 (Tex. App.-Amarillo 1999, pet. ref'd). Generally, a delay of eight months or longer is considered "presumptively prejudicial" and triggers speedy trial analysis. *Knox v. State,* 934 S.W.2d 678, 681 (Tex.Crim.App.1996); *Rangel,* 980 S.W.2d at 843.

Here, Russell was indicted first for escape on December 10, 1997. However, on February 18, 1998, the trial court dismissed the action against him based on the district attorney's motion asserting Russell "is terminally ill and expected to die within the month." Russell was re-indicted for escape on April 28, 1998. On May 18, 1998, the State made its formal announcement of ready. Trial on the merits, however, did not begin until August 14, 2000.

Because the time between the date Russell was indicted for the second time and the date of trial is longer than eight months, the delay is "presumptively prejudicial" and we must, therefore, engage in a speedy trial analysis.

## 2. Reasons for the Delay

The State has the burden of justifying a lengthy delay. *Rangel,* 980 S.W.2d at 843. Different weights are assigned to different reasons for a delay.

*Munoz,* 991 S.W.2d at 822. A deliberate attempt to delay a trial is weighed heavily against the State, while more neutral reasons, such as negligence or overcrowded dockets, are weighed less heavily. *Id.* If the record is silent regarding the reason for the delay, we presume that no valid reason for the delay existed. *Turner v. State,* 545 S.W.2d 133, 137–38 (Tex.Crim. App.1976); *Rangel,* 980 S.W.2d at 844.

Russell filed two motions to dismiss for lack of a speedy trial. A hearing was held on his second motion. At the hearing, two State investigators testified that on two separate occasions—October of 1998 and October of 1999—the trial was set, but did not go to trial because Russell was in federal custody. Kelly Weeks, a prosecutor with the Special Prosecution Unit, testified that she first came to the Unit in September of 1999 and agreed with Russell's counsel at that time to set his case for trial in October of 1999. They were unable to try Russell at that time because he was in federal custody. According to Weeks, once Russell was returned to Texas, she was unable to set his case for trial until August, 2000 due to an overcrowded docket and conflict-of-interest hearings. We hold the reasons offered by the State for the delay between Russell's indictment and trial are neutral and weigh, less heavily than if they were intentional, against the State. *Munoz,* 991 S.W.2d at 822.

## 3. Assertion of the Right

The third factor that a trial court must consider is the defendant's assertion of his right to a speedy trial. *Munoz,* 991 S.W.2d at 825; *Haney v. State,* 977 S.W.2d 638, 642 (Tex.App.-Fort Worth 1998, no pet.), *abrogated on other grounds, Howland v. State,* 990 S.W.2d 274 (Tex. Crim.App.1999). The defendant is respon-

sible for asserting or demanding his right to a speedy trial. *Munoz*, 991 S.W.2d at 825. A lengthy delay or lack of persistence in asserting the right attenuates a speedy trial claim. *Haney*, 977 S.W.2d at 642.

 Russell was re-indicted for the offense of escape on April 28, 1998. It is undisputed that Russell first asserted pro se his right to speedy trial on October 26, 1998 and five additional times thereafter.[2] And, one month before trial, Russell's counsel filed a speedy trial motion, which was set for a hearing on July 28, 2000. At the trial on the motion, Loretta Murray, the court coordinator for the district court, testified that if someone had asserted their speedy trial right, she would have brought it to the trial judge's attention and would have ordered the case set on the docket.

Russell asserted his right to speedy trial eight months after his indictment. A lengthy delay in asserting the right attenuates a speedy-trial claim. *Haney*, 977 S.W.2d at 642. However, once Russell did assert his right, he persistently continued to do so. *See id.* We find Russell sufficiently asserted his right to speedy trial. This factor, therefore, weighs in Russell's favor.

4. *Prejudice Caused by the Delay*

 The final factor we analyze in assessing whether Russell was denied his right to speedy trial is what prejudice he suffered as a result of the delay. In some cases, the delay may be so excessive so as to be presumptively prejudicial. *Guajardo v. State*, 999 S.W.2d 566, 570 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd)(citing *Doggett v. United States*, 505 U.S. 647, 654–57, 112 S.Ct. 2686, 120 L.Ed.2d 520

(1992)). Yet even in the case where the delay is presumptively prejudicial, the appellant must nevertheless show that he has been prejudiced by the delay. *Id.* Once the appellant has made such a showing, the burden shifts to the State to refute that prejudice. *Id.* (citing *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex.Crim. App.1973)).

 The prejudice to the defendant is assessed in the light of the interests which the speedy trial right is designed to protect. *Munoz*, 991 S.W.2d at 826. These interests are: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Id.* The defendant has the burden to make some showing of prejudice. *Id.*

 Russell complains that the pending charges here affected the conditions of his confinement and that his defense was impaired. There is no evidence in the record to show that Russell was being subjected to oppressive incarceration. In fact, while the escape charges against Russell were pending, he already was incarcerated on an unrelated matter. *Id.* at 828.

 Russell further argues that because of the delay he lost several witnesses who were material to his defense. To show prejudice caused by lost testimony, an appellant must show the witness was unavailable at the time of trial, the testimony that would have been offered was relevant and material to the defense, and due diligence was used to locate the witness for trial. *Swisher v. State*, 544 S.W.2d 379, 382 (Tex.Crim.App.1976);

---

2. Russell asserted his right to speedy trial on November 3, 1998, May 13, 1999, November 2, 1999, November 23, 1999, and June 27, 2000. Russell never requested a hearing on any of his motions. Finally, with assistance of counsel, Russell filed his Second Motion to Dismiss Indictment asserting his speedy trial right on July 20, 2000.

*Parkerson v. State,* 942 S.W.2d 789, 792 (Tex.App.-Fort Worth 1997, no pet.). Because prejudice is obvious when witnesses die or disappear, a defendant need only show that the witness was believed to be material to the case. *Phillips v. State,* 650 S.W.2d 396, 402 (Tex.Crim.App.1983); *Webb v. State,* 36 S.W.3d 164, 174–75 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd).

▮ Russell points to his own testimony and that of his trial counsel, given at a hearing on his motion for new trial, as proof that the delay prejudiced his defense. Russell testified that, because of the delay, he has lost at least two mitigation witnesses, including his mother, who died on February 13, 1999. Russell agreed that his mother's testimony, had she lived, would have been "relevant" to his punishment, but admitted on cross examination that his mother would have testified as neither a fact witness nor an alibi witness in his defense. If a potential witness is shown to have died during the delay, the defendant must show that the witness's testimony would have been "exculpatory or otherwise beneficial" to him. *See Deeb v. State,* 815 S.W.2d 692, 706 (Tex.Crim.App.1991)(holding record failed to reflect unavailable witness's testimony would have been "exculpatory or otherwise beneficial to appellant"); *Jackson v. State,* 873 S.W.2d 110, 112 (Tex.App.-Tyler 1994, no pet.)(holding that, although potential witness died, record did not demonstrate his testimony would have benefitted appellant). Russell's opinion that his mother's testimony would have been "relevant" to his punishment does not demonstrate that her testimony would have been exculpatory or beneficial to his defense. *Deeb,* 815 S.W.2d at 706. Russell has, therefore, failed to show his mother's testimony would have been material to his case.

Russell's trial counsel testified that a guard, present when Russell allegedly escaped, and the doctor who did the paperwork for Russell's Special Needs Parole, were unavailable to testify in Russell's favor because of the delay. Specifically, according to Russell's trial counsel, the guard was the last person to allow Russell to leave the prison grounds and he was unavailable because he had moved to Colorado. Russell's trial counsel testified that the doctor's testimony that Russell was seriously ill would have been helpful to counter the State's argument that Russell was perfectly healthy.

Like Russell's mother's proposed testimony, the potential witnesses' proposed testimony would not have been material to Russell's case. It is undisputed that Russell left the prison grounds. Russell's only defensive theory is that because prison guards permitted him to leave the grounds based upon their mistaken belief that he was a physician, he did not "escape" within the meaning of the offense. We have already determined though that, as a matter of law, because Russell induced the guards' mistaken belief by disguising himself as a physician, that he "escaped" under the definition in the Penal Code. Neither the guard's nor the doctor's proposed testimony is exculpatory or beneficial to his defense. *Deeb,* 815 S.W.2d at 706. Accordingly, Russell has failed to demonstrate that his defense was impaired because of the delay.

5. *Balancing*

▮ The first three *Barker* factors weigh in Russell's favor. Furthermore, the delay gives rise to a presumption that the delay was prejudicial. *Knox,* 934 S.W.2d at 681; *Guajardo,* 999 S.W.2d at 571; *Rangel,* 980 S.W.2d at 843. That presumption, however, is rebutted by the fact that Russell has failed to demonstrate that he suffered any prejudice as a result of the delay. *Guajardo,* 999 S.W.2d at

571. Balancing the *Barker* factors, we conclude that the trial court did not err in denying Russell's motion for speedy trial. *See id.* (holding lack of any prejudice outweighs first three *Barker* factors). Russell's issue is overruled.

### Ineffective Assistance of Counsel

Finally, Russell asserts he received ineffective assistance of counsel because trial counsel failed to properly object to the introduction of numerous extraneous offenses at the punishment hearing. We evaluate a claim of ineffective assistance of counsel according to the two-prong test established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State,* 726 S.W.2d 53, 55–57 (Tex.Crim.App.1986). The appellant must first show that his attorney's performance was deficient. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999). Second, assuming the appellant has demonstrated deficient assistance, it is necessary to affirmatively prove prejudice. *Id.* Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Id.* at 813.

 The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Id.* Any allegation of ineffectiveness must be firmly founded in the record. *Id.* Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim and we cannot conclude that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*

Russell's trial counsel, E.G. Huff, testified at the hearing on his motion for new trial. According to Ms. Huff, at least two other attorneys represented Russell before she did. Ms. Huff's testimony at the motion for new trial hearing related to previous counsels' assertion of Russell's speedy trial right. Ms. Huff did not testify about why she failed to properly object to the admission of Russell's extraneous offenses during the punishment phase of trial. Accordingly, Russell's complaints of ineffectiveness are not firmly founded in the record. We overrule Russell's third issue.

### Conclusion

Having overruled Russell's issues on appeal, we affirm the trial court's judgment.