MEMORANDUM OPINION


No. 04-05-00633-CR

Melchor Aurelia NAVA,

Appellant

v.

The STATE of Texas ,

Appellee

From the 379th Judicial District Court, Bexar County, Texas

Trial Court No. 2002-CR-3634

Honorable Bert Richardson , Judge Presiding




Opinion by: Phylis J. Speedlin , Justice



Sitting: Sandee Bryan Marion, Justice

 Phylis J. Speedlin , Justice

 Rebecca Simmons, Justice



Delivered and Filed: December 20, 2006



AFFIRMED

 Melchor Aurelia Nava was convicted of driving while intoxicated, and sentenced to twenty-five years imprisonment. On
appeal, Nava argues (1) he was denied his right to a speedy trial; (2) the prosecutor commented on his post-arrest silence
during closing argument; and (3) he received ineffective assistance of counsel at trial. We overrule Nava's issues and affirm
the judgment of the trial court.

Factual & Procedural Background

 On March 23, 2002, Nava was arrested for driving while intoxicated after he was involved in an automobile accident. The
officers who arrived at the scene of the accident observed that Nava smelled of alcohol, was staggering and swaying, was
confused and disoriented, and had bloodshot eyes and slurred speech. Nava admitted to one officer that he had drunk two
beers. Nava initially refused to take the horizontal gaze nystagmus (HGN) test, but later complied and exhibited all three
clues in one eye, (1) indicating intoxication. Nava refused to submit to any of the other field sobriety tests and refused to
give a breath sample. He was arrested for misdemeanor DWI, and later released on bond. The misdemeanor DWI charge
was dismissed on April 15, 2002. Nava was subsequently indicted for felony DWI, third offense, on May 29, 2002; an
arrest warrant was issued the same day. Nava was not arrested on the felony DWI charge until February 26, 2004. The
record indicates that Nava was held in jail during the 15 months pending trial. On August 18, 2004, Nava filed a "Motion
for Dismissal for Lack of Speedy Trial" seeking dismissal of the felony DWI charge based on the lengthy delay between the
date of indictment and his arrest. After a hearing before trial commenced on May 17, 2005, the court denied Nava's motion
to dismiss, and proceeded to trial. The jury convicted Nava and he received a 25-year sentence. Nava timely appealed.

Analysis 

 Right to Speedy Trial 

 In his first issue, Nava argues that he was denied his right to a speedy trial under the federal and state constitutions. See
U.S. Const. amend. VI, XIV; Tex. Const. art. I, §10; see State v. Rangel, 980 S.W.2d 840, 843 (Tex. App.--San Antonio
1998, no pet.) (speedy trial inquiry is the same under both United States and Texas constitutions). We apply a bifurcated
standard of review when reviewing a trial court's decision on a speedy trial claim. State v. Munoz, 991 S.W.2d 818, 821
(Tex. Crim. App. 1999). We review the trial court's determination of historical facts under an abuse of discretion standard,
while we review de novo the trial court's application of the law to the facts. Id. When, as here, the defendant does not
prevail on a speedy trial claim, we presume the trial court resolved any disputed fact issues in favor of the State, and we
defer to the implied findings of fact supported by the record. Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim. App.
2002). In determining whether a defendant's right to a speedy trial has been violated, we weigh and balance four factors: 
(1) length of the delay; (2) reasons for the delay; (3) assertion of the right; and (4) prejudice to the defendant resulting from
the delay. Shaw v. State, 117 S.W.3d 883, 888-89 (Tex. Crim. App. 2003) (citing Barker v. Wingo, 407 U.S. 514, 530
(1972)). This balancing test requires weighing case-by-case "the conduct of both the prosecution and the defendant," and no
single factor is a "necessary or sufficient condition to the finding" of a speedy trial violation. Munoz, 991 S.W.2d at 821
(quoting Barker, 407 U.S. at 530, 533). The factors are considered together along with any other circumstances that may be
relevant. Id. We address the four Barker factors below. 

 1. Length of the Delay

 In a speedy trial analysis, we focus on the length of the delay as measured from the time the defendant is arrested, or
formally accused, until the date of trial. Shaw, 117 S.W.3d at 889; Rangel, 980 S.W.2d at 843. The length of delay is a
triggering mechanism for analysis of the other Barkerfactors. Munoz, 991 S.W.2d at 821. Further analysis is required if the
length of the delay is "presumptively prejudicial." Rangel, 980 S.W.2d at 843. Courts have generally found a delay
approaching one year to be presumptively prejudicial, thus triggering further analysis of the Barkerfactors. Id.; Dragoo v.
State, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). Here, Nava was indicted on May 29, 2002, and arrested on February
26, 2004. The date of his trial was May 17, 2005. We conclude that the 15-month delay between the date of his arrest and
the date of trial, as well as the 36-month delay between his indictment and trial, is presumptively prejudicial and clearly
triggers consideration of the remaining three Barker factors. Here, as in Shaw where there was a 38-month delay between
the defendant's indictment and trial, the delay stretched far beyond the minimum needed to trigger a speedy trial inquiry;
consequently, this factor weighs heavily in favor of finding a violation of Nava's right to a speedy trial. See Shaw, 117
S.W.3d at 889; see also Dragoo, 96 S.W.3d at 314 (delay of three and one-half years); Zamorano, 84 S.W.3d at 649 (almost
four year delay between arrest and plea hearing). 

 2. Reasons for the Delay

 Upon a finding that a presumptively prejudicial delay has occurred, the State bears the initial burden of justifying the delay.
 Rangel, 980 S.W.2d at 843. Different weights are assigned to different reasons for a delay. Munoz, 991 S.W.2d at 822. A
deliberate attempt to delay a trial is weighed heavily against the State, while more neutral reasons such as negligence or
overcrowded dockets are weighed against the State, but less heavily. Id. If the record is silent regarding the reason for the
delay, it weighs against the State, but not heavily because we do not presume either a deliberate attempt by the State to
prejudice the defense or a valid reason for the delay. Dragoo, 96 S.W.3d at 314; Zamorano, 84 S.W.3d at 649-50.

 Here, other than one motion for continuance filed by Nava, the record does not show how many times Nava's trial was
reset, or the reasons for the resets, during the delay between his arrest and trial. None of the trial settings, or re-settings, are
reflected in the clerk's record, other than one reset based on a motion for continuance filed by Nava's newly appointed
counsel. On January 20, 2005, the trial court granted a motion to withdraw filed by Nava's prior attorney based on a conflict
of interest; the court appointed a new attorney to represent Nava on February 23, 2005. The new counsel then filed a
motion to continue the March 14, 2005 trial setting, which was granted. Trial commenced on May 17, 2005. This
two-month delay is the only delay reflected in the record that may be attributed to Nava and weighed against him. At the
speedy trial hearing, the State offered no explanation for the rest of the delay, and the reasons for the remaining resets and
other several months of delay cannot be ascertained from the record. A record that is silent as to the reasons for delay gives
rise to a presumption that no valid reason for delay exists. Rangel, 980 S.W.2d at 844. Therefore, the entire 15-month delay
between arrest and trial, minus the two months attributed to Nava's continuance, is weighed against the State since the
ultimate responsibility for such circumstances rests with the government rather than with the defendant. See Zamorano, 84
S.W.3d at 649. However, this factor is not weighed heavily against the State because there is no evidence that the State
deliberately attempted to delay Nava's trial. See id. at 649-50; Dragoo, 96 S.W.3d at 314.

 3. Assertion of the Right

 The third factor that a trial court must consider is the defendant's assertion of his right to a speedy trial. Munoz, 991
S.W.2d at 825. A defendant is responsible for asserting or demanding his right to a speedy trial. Id. A lengthy delay or
lack of persistence in asserting the right attenuates a speedy trial claim. Russell v. State, 90 S.W.3d 865, 873 (Tex.
App.--San Antonio 2002, pet. ref'd). Similarly, a defendant's request for dismissal rather than a prompt trial setting may
attenuate the strength of his speedy trial complaint. Rangel, 980 S.W.2d at 844. A defendant's failure to assert his right to a
speedy trial is not necessarily dispositive of his claim. Munoz, 991 S.W.2d at 825. Instead, a defendant's failure to assert his
right is weighed and balanced with the other Barkerfactors, although it makes it more difficult for him to prove he was
denied a speedy trial. Id.

 Here, Nava never filed a motion requesting a speedy trial setting. Instead, he filed a motion to dismiss due to the lack of a
speedy trial on August 18, 2004, approximately six months after his arrest. (2) Although he requested a pre-trial hearing in
the prayer of his motion to dismiss, Nava never set the matter for a hearing during the ensuing nine months. The motion to
dismiss was heard on the day of trial, and denied. Nava's lack of persistence in asserting his speedy trial right by failing to
request a prompt trial setting, or a hearing and ruling on his motion before the day of trial, weighs against him. See Cook v.
State, 741 S.W.2d 928, 940 (Tex. Crim. App. 1987), vacated and remanded on other grounds, 488 U.S. 807 (1988)
(weighing assertion-of-right factor against defendant where "there is no evidence beyond the two motions for speedy trial
filed with the district clerk that appellant asserted his right to a speedy trial by requesting hearings to present evidence on
the matter"); see also Barker, 407 U.S. at 531-532. 

 4. Prejudice Caused by the Delay

 The last Barker factor is "prejudice to the defendant." Munoz, 991 S.W.2d at 826. Prejudice to the defendant is assessed in
light of the interests the right to a speedy trial is designed to protect: (1) preventing oppressive pretrial incarceration; (2)
minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. Id. Of
these interests, the most important is protecting a defendant's ability to adequately prepare his case because compromise of
this interest "skews the fairness of the entire system." Id. (quoting Barker, 407 U.S. at 532-33). The defendant has the
burden to make some showing of prejudice, although a showing of actual prejudice is not required. Id. When the defendant
makes a prima facie showing of prejudice, the burden shifts to the State to show that the defendant suffered "no serious
prejudice beyond that which ensued from the ordinary and inevitable delay." Id. (quoting Ex parte McKenzie, 491 S.W.2d
122, 123 (Tex. Crim. App. 1973)). For purposes of showing a speedy trial violation, the prejudice suffered by the defendant
must emanate from the delay. Anderson v. State, 8 S.W.3d 387, 392 (Tex. App.--Amarillo 1999, pet. ref'd).

 The dispositive consideration in determining whether Nava made a prima facie showing of oppressive pretrial incarceration
is that Nava was incarcerated during the entire fifteen-month delay between his arrest and trial. See Munoz, 991 S.W.2d at
828. Under Munoz, the fifteen-month period that Nava spent in jail awaiting trial constitutes a prima facie showing of
oppressive pretrial incarceration. Id.; Meyer v. State, 27 S.W.3d 644, 650 (Tex. App.--Waco 2000, pet. ref'd). On the
second issue, minimizing his pretrial anxiety and concern, Nava did not testify that the delay caused him to suffer any
unusual anxiety or concern, "i.e., any anxiety or concern beyond the level normally associated with being charged with a
felony... ." See Shaw, 117 S.W.3d at 890. Further, there was no evidence that Nava suffered lost employment opportunities
or lost wages, experienced medical problems, or that he or his family suffered emotionally or economically during the
delay. Cf.,Zamorano, 84 S.W.3d at 653-54 (defendant testified to undue anxiety, lost income and missed work days as
result of delay). Nava presented no evidence, other than the fact of pre-trial incarceration itself, to make a prima facie
showing that he suffered undue anxiety from the delay. See Meyer, 27 S.W.3d at 650. 

 Finally, we must determine whether Nava made a prima facie showing that his defense was impaired by the delay. Nava
claims that his defense was prejudiced because potential witnesses to the accident, i.e., a couple at the nearby car wash, and
a clerk at a store he visited, were not developed due to the delay in arresting him on the felony DWI offense. He also asserts
the delay damaged his defense due to the faded memories of his witnesses and himself by the time of trial. In order to make
"some showing of prejudice" caused by lost testimony, Nava must show that a particular witness was unavailable at the time
of trial, the witness's testimony would have been relevant and material to his defense, and he used due diligence to locate
and produce the witness for trial. Harris v. State, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973); Meyer, 27 S.W.3d at
650;Russell, 90 S.W.3d at 873. 

 At the speedy trial hearing, Nava made no showing that he attempted to locate or contact, or even determine the identity of,
any such "lost" witnesses. Further, he made no showing of what material information these witnesses would have provided
in their testimony, how it would have benefitted his defense, or that he diligently attempted to secure their presence at trial. 
In addition, Nava knew immediately after the accident that he had been charged with DWI, although as a misdemeanor at
that time, and the relevant witnesses were the same regardless of whether and when the DWI was enhanced to a felony. 
Moreover, Nava testified that he knew the misdemeanor DWI charge was being dismissed, he was told he was "on
standby," and he assumed the charge would be enhanced to a felony. Finally, the mere fact that witnesses' memories have
faded over time, without a showing that the "lost" testimony is significant to the outcome of the case, does not amount to
prima facie evidence of prejudice. Munoz, 991 S.W.2d at 829 ("bare assertion of dimming memories does not constitute
some showing of an impairment to the defense"); Meyer, 27 S.W.3d at 650-51. We conclude Nava has failed to make a
prima facie showing that his defense was impaired by the delay.

 In sum, while Nava made a prima facie showing that he suffered oppressive pretrial incarceration, he failed to make a
prima facie showing that he suffered undue anxiety or that his defense was impaired due to the delay. Therefore, his
showing of prejudice is minimal, and this factor should be weighed in favor of the State. See Munoz, 991 S.W.2d at 829
(prejudice was "minimal" where defendant was incarcerated for seventeen months and showed oppressive pretrial
incarceration and anxiety, but failed to show his defense was impaired by the delay); see also Meyer, 27 S.W.3d at 651.

 Weighing the Barker factors based on the record before us, we conclude that Nava's right to a speedy trial was not violated. 
The first two factors weigh in Nava's favor. The third factor weighs against Nava because he showed a lack of persistence
in asserting his right to a speedy trial by failing to request a prompt trial setting and failing to set his motion to dismiss for a
hearing for nine months. Finally, with respect to the fourth factor, the length of delay gives rise to a presumption that the
delay was prejudicial; however, that presumption is rebutted by the fact that Nava has failed to make a prima facie showing
that he suffered more than minimal prejudice as a result of the delay. See Russell, 90 S.W.3d at 874. Accordingly, we hold
that Nava's right to a speedy trial was not violated, and we overrule this issue.

Comment on Post-Arrest Silence

 In his second issue, Nava complains that the prosecutor improperly commented on his post-arrest silence in closing
argument. In his brief, Nava cites three parts of the State's closing argument in which the prosecutor referred to Nava's
refusal to take the breath test, perform the field sobriety tests, and participate in a videotape, and his failure to "profess his
innocence" on a videotape; however, Nava has failed to preserve any error for review. His only objection during the
prosecutor's argument came at the end of the challenged comments, when he stated, "[w]e would object to this line of
argument ... [i]t lowers the burden the State has by indicating that because he didn't testify that he should be found guilty." 
Nava objected to the argument as a comment on his failure to testify at trial, not as a comment on his post-arrest silence. 
Nava may not raise an argument on appeal that does not conform to the objection made at trial. Rezac v. State, 782 S.W.2d
869, 870 (Tex. Crim. App. 1990) ("an objection stating one legal basis may not be used to support a different legal theory
on appeal"). Therefore, Nava failed to preserve the error he raises on appeal. Tex. R. App. P. 33.1(a). 

 Even if Nava had preserved the issue for review, the prosecutor's statements about Nava's refusal to take the field sobriety
and breathalyzer tests or make a video, and about the video room procedure and environment, were a permissible
summation of the testimony of Officer Ragland. The prosecutor's comments about Nava knowing what was inside the
video room and not wanting the jury to "see what he was like that night" were reasonable deductions from the evidence that
Nava had two prior DWI convictions and refused to enter the video room or make a videotape. Finally, the prosecutor's
reference to Nava foregoing the opportunity to "go in the video room and tell us I'm not intoxicated" was a permissible
response to defense counsel's statement in opening argument that Nava "asserted his sobriety to the officers and to anyone
who would listen." Nava's issue is overruled. See Cooks v. State, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992) (four
permissible categories of jury argument are: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3)
response to argument of opposing counsel; and (4) plea for law enforcement); see also Emigh v. State, 916 S.W.2d 71,
72-73 (Tex. App.--Houston [1st Dist.] 1996, no pet.) (prosecutor was entitled to refer to defendant's refusal to take
videotaped sobriety tests in summation of the evidence). 

Ineffective Assistance of Counsel

 Finally, in his third issue, Nava contends that his trial counsel rendered ineffective assistance by: (1) failing to raise the
proper objection to the prosecutor's closing argument; (2) arguing during closing that Nava was "not innocent" and "should
not have been driving;" (3) failing to investigate and present evidence regarding Nava's medical condition which could
have affected his ability to perform the field sobriety tests; and (4) failing to investigate and present evidence regarding
Nava's blindness in one eye which could have affected the HGN test results.

 To establish ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that his trial
counsel's performance was deficient, and the deficient performance prejudiced him to such a degree as to deprive him of a
fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Hernandez v. State, 988 S.W.2d 770, 770 n.3 (Tex. Crim.
App. 1999); Harling v. State, 899 S.W.2d 9, 12 (Tex. App.--San Antonio 1995, pet. ref'd). To show deficient performance,
the first prong of the Strickland standard, Nava must prove that his counsel's performance fell below an objective standard
of reasonableness and must rebut the presumption that counsel's trial decisions were based on sound trial strategy. 
Thompson v. State, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999). To satisfy this prong, any allegations of ineffectiveness
must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. Id. at 813. 
We do not look at isolated acts or omissions to determine the effectiveness of counsel, but review the totality of the
representation. Id.; Harling, 899 S.W.2d at 12.

 As to Nava's first complaint regarding the prosecutor's closing argument, we have determined that the comments were
permissible; thus, failure to raise a particular objection was not deficient performance. Nava's second complaint is that his
counsel's comments during closing argument that Nava was "not innocent" and "should not have been driving" were so
egregious that they could not have been a reasonable trial strategy. We disagree. Reading the comments in the context of
the argument as a whole, and not in isolation, counsel's comment that Nava was "not innocent" could have been a reference
to him not being naive about the system due to his two prior DWI convictions, of which the jury had been informed. 
Further, counsel's comment that Nava "should not have been driving" that night, when read in context, could have been a
reference to his blindness in one eye and not an admission that he was in fact intoxicated while driving. Based on the
record, we cannot say that Nava has rebutted the presumption that counsel's argument was a reasonable trial strategy
designed to explain why he failed the HGN test and refused to submit to the other sobriety tests.

 Finally, as to Nava's third and fourth complaints regarding counsel's failure to develop and present evidence of his medical
conditions, Nava filed a pro se motion for new trial complaining of the failure to introduce his medical records as
ineffective assistance of counsel; however, no hearing was held and thus no evidence was developed in support of the claim. 
In the absence of a developed evidentiary record which adequately reflects the motives behind counsel's actions and
omissions, it is extremely difficult to prove that counsel's performance was deficient. Rylander v. State, 101 S.W.3d 107,
110-11 (Tex. Crim. App. 2003). Absent record evidence to the contrary, we must presume that counsel's conduct fell within
the wide range of reasonable professional assistance. Thompson, 9 S.W.3d at 813-814. To conclude that the representation
by Nava's counsel was deficient without a proper record exploring counsel's trial strategy would require this court to
speculate as to counsel's motivation and reasoning, which we may not do. Moreover, the jury did hear testimony by Officer
Ragland that Nava told him on the night of the accident that he had a fractured skull, was blind in one eye, and "something
was wrong with his leg." The State never disputed that Nava suffered from these medical conditions. In addition, Nava has
made no showing of the existence of any medical records or other medical evidence that he claims his counsel should have
presented at trial. The fact that another attorney might have pursued a different course of action or tried the case differently
does not establish ineffective assistance of counsel. Dickerson v. State, 87 S.W.3d 632, 637 (Tex. App.--San Antonio 2002,
no pet.).

 Without evidence in the record to both establish deficiency and rebut the presumption of reasonable assistance, Nava is
unable to satisfy the first prong of Strickland. Thompson, 9 S.W.3d at 814; Jackson v. State, 973 S.W.2d 954, 957 (Tex.
Crim. App. 1998). Failure to make the required showing of either Strickland prong, deficient performance or sufficient
prejudice, defeats a claim for ineffective assistance. Thompson, 9 S.W.3d at 813. Accordingly, we hold that Nava has
failed to establish deficient performance by his trial counsel; therefore, we overrule his third issue.

 Based on the foregoing reasons, the judgment of the trial court is affirmed. 



 Phylis J. Speedlin , Justice





Do Not Publish 

1. Nava told the officer that he is blind in one eye. At trial, the State did not challenge Nava's assertion that he is legally
blind in one eye; he wore an eye patch during trial.

2. Nava also filed a pro se motion to dismiss for failure to prosecute on October 11, 2004. The trial court is not required to
consider pro se pre-trial motions which were filed when the defendant was represented by counsel. Meyer v. State, 27
S.W.3d 644, 648 (Tex. App.--Waco 2000, pet. ref'd).