Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## MEMORANDUM OPINION

No. 04-09-00249-CR

Clark A. **INGRAM**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CR-8761
Honorable Pat Priest, Judge Presiding

Opinion by:   Rebecca Simmons, Justice

Sitting:       Catherine Stone, Chief Justice
            Sandee Bryan Marion, Justice
            Rebecca Simmons, Justice

Delivered and Filed: April 21, 2010

AFFIRMED

Appellant Clark Ingram pled no contest to a charge of robbery. The trial court sentenced Ingram to four years deferred adjudication and imposed a $1,500.00 fine. On appeal, Ingram asserts the trial court violated his right to a speedy trial under both the federal and state constitutions. We affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Due to the nature of speedy trial claims, the following is a review of the pertinent dates. On September 2, 2005, Ingram was arrested for aggravated robbery, posted bond, and was released from custody. One month later, on October 5, 2005, the trial court appointed Dorothy Diaz as counsel, and on November 22, 2005, the grand jury returned an indictment charging Ingram with robbery. Three months later, on February 13, 2006, Diaz filed a motion to withdraw as counsel citing good cause based on an inability to "effectively communicate with [Ingram] so as to adequately represent" him. The following day, the trial court appointed attorney Stephen Blount, who later withdrew on September 22, 2006, citing Ingram's desire to have counsel removed based on "irreconcilable conflict of interests and personalities." On the same day as Blount's withdrawal, the trial court appointed Terrence McDonald as Ingram's counsel.

On May 14, 2007, McDonald sought a hearing on a motion to dismiss on speedy trial grounds. At the speedy trial hearing, held over a year later on August 12, 2008, Ingram testified that the almost three-year delay from initial arrest to the speedy trial hearing was extremely stressful because of the inconvenience of travelling to the court fifteen times without resolving the case. Also, for over two years, he was required to report every Wednesday to Alamo Bail Bond. The State offered no reason for the delay, and the trial court denied the motion. Following the hearing, Ingram negotiated a plea agreement with the State. Thereafter, at a hearing on December 1, 2008, the trial court reviewed the plea agreement and a pre-sentence investigation report. After Ingram requested his plea be withdrawn, the court did not enter the plea and put the case on a fast track for trial.

On April 13, 2009, Ingram again appeared before the court to enter a new plea. The trial court denied Ingram's reassertion of his speedy trial motion, and Ingram formally entered a plea

of no contest before the trial court. The trial court admonished Ingram regarding the voluntariness of his plea and struck a provision of the plea agreement waiving Ingram's right to appeal. The trial court subsequently sentenced Ingram to four years deferred adjudication, and this appeal followed.

## WAIVER

The State alleges Ingram did not preserve his argument that the trial court erred in denying his speedy trial motion based on Ingram's failure to file "a written motion to dismiss for failure to provide a Speedy Trial" prior to trial. Rather, the State argues Ingram merely requested a hearing on a motion to dismiss based on speedy trial grounds. The record reveals that Ingram filed a Notice for Pretrial Motion to Dismiss on Speedy Trial Grounds. The court held a full hearing on the speedy trial motion, and the State did not object to the form of the motion.

After Ingram was sentenced pursuant to the plea agreement, the trial court verbally granted him permission to appeal the "rulings of pre-trial motions." This court has held that a defendant, who enters a plea of no contest, preserves his right to appeal when the record reflects the trial court's verbal permission as well as the written certification of the right to appeal. *McFadden v. State*, 283 S.W.3d 14, 19 (Tex. App.—San Antonio 2009, no pet.) (stating "the trial court's oral pronouncement and certification that an individual has the right to appeal a pre-trial ruling controls over a defendant's previous boilerplate waiver"). In this case the trial court gave Ingram such permission, and it is reflected in the certification. We, therefore, conclude that Ingram preserved his speedy trial argument.

**SPEEDY TRIAL**

Ingram asserts that the trial court erred in denying his speedy trial motion based on violations under both the federal and state constitutions. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002). In response, the State argues that the trial court did not err in denying Ingram's speedy trial motion pursuant to the *Barker* factors. *See Barker v. Wingo*, 407 U.S. 514, 530-33 (1972).

**A.      Standard of Review**

When reviewing speedy trial claims, an appellate court applies a "bifurcated standard of review," meaning an abuse of discretion for facts and de novo for questions of law. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999) (citing *Barker*, 407 U.S. at 530-33). Texas courts analyze speedy trial claims under federal and state constitutions in the same manner. *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

Federal constitutional speedy trial claims must be analyzed on an ad hoc basis by weighing and then balancing four factors: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Munoz*, 991 S.W.2d at 821. Courts refer to these factors as the "*Barker* Factors." *Id*. No single factor is necessary or sufficient to the finding of a speedy trial violation, and the *Barker* factors must be considered together with such other circumstances as may be relevant. *Id*.

**B.      First *Barker* Factor: Length of Delay**

The first *Barker* factor, length of delay, is a triggering mechanism for the other *Barker* factors. *Munoz*, 991 S.W.2d at 821. Here, the State concedes that the delay from the time of arrest or indictment to final adjudication was approximately four years. *See State v. Rangel*, 980

S.W.2d 840, 843 (Tex. App.—San Antonio 1998, no pet.) (noting a delay beyond eight months is "presumptively prejudicial, thus triggering further analysis of speedy trial claims").

## C. Second *Barker* Factor: Reason for the Delay

Because the delay resulted in a presumption of prejudice to Ingram, the State bore the initial burden of justifying the delay. *Id.* at 843 (citing *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994)). Appellate courts generally assign different weights to given reasons for the delay. *Munoz*, 991 S.W.2d at 822. For example, a deliberate attempt to delay trial weighs heavily against the government; a neutral reason for delay, such as negligence or overcrowded courts, weighs less heavily against the government; and a valid reason for delay does not weigh against the government at all. *Id*. Importantly, a delay attributable, in whole or in part, to the defendant may even constitute a waiver of a speedy trial claim. *Id*. If the record is silent as to the cause of delay, the trial court may presume that no valid reason for delay exists. *State v. Burckhardt*, 952 S.W.2d 100, 103 (Tex. App.—San Antonio 1997, no pet.) (citing *Turner v. State*, 545 S.W.2d 133, 137-38 (Tex. Crim. App. 1977)). Where the State offers no reason to justify the delay, the second *Barker* factor weighs against the State. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

The State argues that the withdrawals of Ingram's counsel, as well as the withdrawal of his first plea, contributed to the delay and, therefore, such delay should weigh against Ingram. The case of *Harvey v. State*, 173 S.W.3d 841, 845-46 (Tex. App.—Texarkana 2005, no pet.), is instructive. There the court held that the delay was partially caused by the defendant's request for the withdrawal of his counsel. *See also Rider v. State*, No. 09-03-088-CR, 2004 WL 584571, at *1 (Tex. App.—Beaumont Mar. 24, 2004, no pet.) (not designated for publication) (concluding that portions of trial delay were attributable to the fact that the defendant's first two

attorneys withdrew from the case due to lack of cooperation); *Padilla v. State*, No. 08-06-093-CR, 2007 WL 2450569, at *3 (Tex. App.—El Paso Aug. 30, 2007, no pet.) (not designated for publication). Similarly, Ingram's first two appointed attorneys withdrew due to inability to "effectively communicate with [Ingram]," and "irreconcilable conflict of interests and personalities." The length of delay attributable to these withdrawals amounted to approximately one year and is attributable to Ingram.

The record, however, is silent as to justification for the over two year delay from September 22, 2006, the original date of the appointment of McDonald, to December 1, 2008, the date of Ingram's initial withdrawal of his plea. Although Ingram's actions contributed to the delay prior to September 22, 2006, the State has failed to satisfy its burden to provide a valid reason for the two-year delay after September 22, 2006. We conclude that the second *Barker* factor weighs against the State. *See Munoz*, 991 S.W.2d at 822; *see also Dragoo*, 96 S.W.3d at 314.

**D.     Third *Barker* Factor: Assertion of the Right to a Speedy Trial**

A defendant is responsible for asserting his right to a speedy trial. *Munoz*, 991 S.W.2d at 825 (citing *Barker*, 407 U.S. at 527-30). "The more serious the deprivation, the more likely a defendant is to complain." *Id*. (citing *Barker*, 407 U.S. at 531). Although failure to assert his right is not necessarily dispositive of his speedy trial claim, a lengthy delay or lack of persistence in asserting the right attenuates a speedy trial claim. *Id*.; *Russell v. State*, 90 S.W.3d 865, 873 (Tex. App.—San Antonio 2002, pet ref'd). For example, in *Russell*, the defendant asserted his speedy trial right eight months after his indictment and five times thereafter. *Russell*, 90 S.W.3d at 873. The court concluded that once the defendant asserted his speedy trial right, he

persistently continued to do so, which supported weighing the third *Barker* factor in appellant's favor. *Id*.

Ingram first asserted his speedy trial right on May 14, 2007, approximately one year and eight months after arrest. The trial court conducted a hearing on the speedy trial motion on August 12, 2008, approximately one year and three months later. Ingram made no speedy trial assertions during the interim before the motion for speedy trial was ruled on by the trial court. Moreover, Ingram did not assert his speedy trial right again following the trial court's denial of the motion until the final adjudication of this case on April 13, 2009 based on his plea agreement. Ingram's lack of persistence attenuates Ingram's assertion of his speedy trial right. *See Id.* at 873.

In addition to his lack of persistence, Ingram's acceptance of a plea on the trial date also indicates a desire to avoid trial. This court has previously held that the acceptance of a plea-bargain agreement on the trial date, after the denial of a speedy trial motion, impairs the appellant's speedy trial claim by demonstrating that his motivation is not a speedy trial, but rather to avoid trial. *Traylor v. State*, No. 04-04-00432-CR, 2005 WL 1458211, at *3 (Tex. App.—San Antonio June 22, 2005, no pet.) (not designated for publication). Ingram argues that he sufficiently asserted his right to a speedy trial, and the withdrawal of his August 12, 2008 plea agreement, as well as the April 13, 2009 plea agreement, illustrate that he was "worn down" by the frustration of waiting for his trial and should not be weighed against him. In light of Ingram's plea indicating a desire to avoid trial, and the fact that Ingram made no persistent attempt to assert a speedy trial claim, the third *Barker* factor weighs in the State's favor.

**E.    Fourth *Barker* Factor: Prejudice to the Accused**

The last *Barker* factor is "prejudice to the defendant." *Munoz*, 991 S.W.2d at 825 (citing *Barker*, 407 U.S. at 532-33). Prejudice is assessed "in the light of the interests" for whom "the speedy trial right [is] designed to protect." *Id.* These interests are as follows: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Id.* Of these sub-factors, the most serious is the last. *Id.* at 826. A defendant has the burden to make some showing of "prejudice;" although, "actual prejudice" is not required. *Id.* When a defendant makes a "prima facie showing of prejudice," the State then bears the burden of proving the accused suffered no serious prejudice beyond that which would ensue from an ordinary and inevitable delay. *Id.*

*1.  Preventing Oppressive Pretrial Incarceration*

Ingram was not incarcerated while awaiting trial. Therefore, if Ingram is to make a showing of prejudice, he must do so under one of the other two sub-factors.

*2.  Minimizing Anxiety and Concern of the Accused*

General anxiety is at least some evidence of the type of anxiety recognized under the prejudice prong of *Barker*. *Cantu v. State*, 253 S.W.3d 273, 286 (Tex. Crim. App. 2008) (citing *Zamorano*, 84 S.W.3d at 654). "But evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Id.* The *Cantu* court gives two examples of the "major evils" protected by the speedy trial guarantee: disruption of employment or a draining of financial resources. *Id.* (citing *U.S. v. Marion*, 404 U.S. 307, 320 (1971)). Relying on these examples, the *Cantu* court notes that the defendant's general allegations of anxiety—self-serving testimony that he was anxious about the case—

failed to rise to the level of the type of anxiety one would suffer as a result of the two examples. *Id.* at 285-86; *see also Rangel*, 980 S.W.2d at 845 (holding that suspension from employment presented some evidence of prejudice).

In the present case, Ingram testified that he was "forced to live under [a] cloud of anxiety for almost four years, at times without assistance of counsel." He also testified that it had been stressful reporting to Alamo Bail Bonds every week for the past two years and showing up for court fifteen times, "many times without representation." However, Ingram points to no prejudice equivalent to the "major evils" noted in *Cantu*, 253 S.W.3d at 286, and *Rangel*, 980 S.W.2d at 845. Moreover, the record fails to show that his anxiety was any greater than the general anxiety normally ensuing from a felony charge or investigation. *Cantu*, 253 S.W.3d at 286.

### 3. *Limiting the Possibility that the Defense will be Impaired*

Lastly, there are three recognized reasons for impaired defense: loss of witnesses, loss of evidence, or impairment of memory. *See Munoz*, 991 S.W.2d at 829; *see also Traylor*, 2005 WL 1458211, at *4; *State v. Guerrero*, 110 S.W.3d 155, 162 (Tex. App.—San Antonio 2003, no pet.). Ingram makes no allegations of impaired defense.

Accordingly, the three sub-factors weigh against Ingram. He made bond pretrial, did not suffer anxiety and concern beyond that normally ensuing from a felony charge, and made no argument that his defense was impaired. Therefore, the fourth *Barker* factor weighs against Ingram and in favor of the State.

### CONCLUSION

Although the delay was presumptively prejudicial and weighs against the State, Ingram's assertions of his speedy trial right were sparse, and the two plea agreements suggest that Ingram

was not really interested in a trial. *See Munoz*, 991 S.W.2d at 821; *Dragoo*, 96 S.W.3d at 314; *Russell*, 90 S.W.3d at 873. Furthermore, the fact that Ingram did not suffer pretrial incarceration, that his own general testimony of anxiety and concern was not sufficient, and that his defense was not impaired, suggests that Ingram did not suffer any prejudice. *See Munoz*, 991 S.W.2d at 825. We, therefore, hold that the trial court did not violate Ingram's right to a speedy trial and did not err in denying Ingram's speedy trial motion. Accordingly, the judgment of the trial court is affirmed.

Rebecca Simmons, Justice

DO NOT PUBLISH